ELMO BROWN, BERNARD CALL and WALTER H. WHIFFEN, Constituting the Board of Trustees for School District No. 8, Town of Greenburgh, Westchester County, State of New York, Plaintiffs, *v.* WILLIAM BUNSELMEYER, WILLIAM C. EMERICK and CHARLES H. SCHOCK, Individually and as Claiming to Constitute the Town Board of Education for the Town of Greenburgh, Westchester County, State of New York, and WILLIAM A. BUCKLEY, Receiver of Taxes of the Town of Greenburgh, Westchester County, State of New York, Defendants.

(Supreme Court, Westchester Special Term, December, 1917.)

Constitutional law — statutes — schools — jurisdiction — Education Law — town school boards — United States Constitution, Fourteenth Amendment — New York Constitution, art. IX, § 1; art. X, § 2.

    Under the constitutional provision (State Const. art. IX, § 1) that the legislature shall provide " for the maintenance

40

and support of a system of free common schools, wherein all the children of this State may be educated" the legislature has power to provide such a system or systems as will meet the needs of each locality, and its classification is not subject to judicial review; but it is not required to provide the same system or organization for each locality in the state.

The statute (Education Law, art. XI-A, §§ 330-365, added by chapter 328 of the Laws of 1917), the purpose of which is to reorganize the rural school districts into a town school system and provide for the creation of a town board of education in each town, with certain exceptions, and similar boards in certain union free school districts, the qualification of members of such boards, appointment of officers, their powers and duties etc., is constitutional and valid.

Section 331 of the Education Law, which establishes a town board of education in each town of the state, having jurisdiction over all the schools of the town as thereinafter provided, "except in union free school districts having a population of fifteen hundred or more or employing fifteen teachers or more at the time this act takes effect, and the school districts in the several towns of a county which adjoins a city having a population of one million or more and in which there are only two district superintendents," does not violate the Fourteenth Amendment of the United States Constitution in that it unlawfully discriminates against the citizens of Westchester county and denies to them the equal protection of the laws, because the exception can only apply to and affect Nassau county.

The provision of section 352 of the Education Law for an apportionment and distribution, by the old trustees of the school districts subject to the statute, of the funds remaining in their hands after closing the financial affairs of the districts, except state moneys, among the taxpayers of the district, violates no constitutional provision, such transfer being simply from one public authority to another for convenience of administration.

The provision of section 353 of the Education Law which makes the bonded indebtedness for the several school districts affected a charge against property subject to tax for the maintenance of the schools of the town, and provides for an appraisal of school property, a credit to each district of its

value after deducting the bonded indebtedness and an apportionment and distribution of the amount credited to and among the owners or possessors of taxable property in the district in the ratio of their several assessments, does not violate any constitutional inhibition, the purpose of the statute being merely to equalize the burden of the new school system upon all the taxpayers of the town.

The word "election" in section 354 of the Education Law, as well as the method prescribed for such election, is not an "election" within the meaning of section 2 of article X of the State Constitution which provides the method by which certain county, city, town and village officers shall be selected, etc., but is simply the equivalent of an appointment by the boards of education of the town jointly assembled for that purpose and said section 354 will not be held unconstitutional merely because the legislature made use of the word "election" for what is plainly nothing but an appointment within the meaning of the Constitution.

ACTION to determine constitutionality of Town School Law (Laws of 1917, chap. 328), and to restrain defendants from acting thereunder.

Cohen & Richter (Julius Henry Cohen, of counsel), David Tepp, for town board of education.

Merton E. Lewis, attorney-general (Sanford W. Smith, of counsel), intervening in behalf of the state.

Frank B. Gilbert, for commissioner of education.

YOUNG, J. The plaintiffs are the trustees of school district No. 8 of the town of Greenburgh. The defendants constitute the town board of education of that town, claiming to be such under the provisions of chapter 328 of the Laws of 1917. The plaintiffs seek in this action a determination of their rights and duties, a decree of this court that the law in question is unconstitutional and in violation of section 1 of the Fourteenth Amendment to the United States Con-

stitution; section 1 of article 9, and section 2 of article 10 of the Constitution of this state, and that the defendants be restrained from exercising any powers under that act and from taking over the school property of the district and levying or collecting any tax, etc.

The purpose of the act in question seems to be to re-organize the rural school districts into a town school system with a single town board of education instead of separate boards in each of the several districts of the towns. Defendants assert that this legislation was enacted upon the recommendation of the state department and the regents of the university, and that it is a great advance in the solution of the problem of rural education. It provides for the creation of a town board of education in each town with certain exceptions, to which I shall refer hereafter, and similar boards in certain union free school districts, the qualification of members of such board, appointment of officers, their powers and duties, etc. Such boards are made bodies corporate and are given full control and management of the school and school property, the levy and collection of taxes for school purposes, etc. The act contains the following provision:

" § 331. *Town board of education.* 1. A town board of education in each town of the state, having jurisdiction over all the schools in the town as hereinafter provided, except in union free school districts having a population of fifteen hundred or more or employing fifteen teachers or more at the time this act takes effect, and the school districts in the several towns of a county which adjoins a city having a population of one million or more and in which there are only two district superintendents, is hereby established to begin on the first day of August, nineteen hundred and seventeen."

It is contended by plaintiffs that this section violates

the provisions of the Fourteenth Amendment to the United States Constitution in that it unlawfully discriminates against the citizens of Westchester county and denies to them the equal protection of the laws, because the exception contained in this section, of the school districts in the towns of a county adjoining a city having a population of one million or more, and in which there are *only* two district superintendents, was intended, and can only apply to Nassau county, is purely arbitrary and unreasonable and unfairly discriminates against the towns of Westchester county.

I understand it to be conceded that this exception can only affect Nassau county, and we may assume that that was the legislative intent. Could the legislature enact a law reorganizing and consolidating the rural school system in towns and except from its provisions the towns of Nassau county without violating the constitutional provision in question; or was it obliged to include all rural communities in the state, or at least include in any exception all counties which apparently were, or might be, claimed to be of a similar nature with respect to wealth, population and their proximity to a large city like New York? It seems to me that this is a matter over which the legislature has full control. It is not for the courts to determine whether the legislative reason for the exclusion of one county from the provisions of the act and the inclusion of another, apparently similarly situated, is good or bad. To attempt such a review opens a wide field of pure speculation. To the legislature has been intrusted power to provide " for the maintenance and support of a system of free common schools, wherein all the children of this State may be educated " (N. Y. State Const. art. 9, § 1); and it is clearly within its province to provide the necessary legislation to accomplish that purpose. Clearly, this constitutional provi-

sion does not require it to provide the same system and organization for each locality in the state. On the contrary, it is within its power to provide such a system or systems as will meet the special needs of each locality, and its classification is not the subject of judicial review. What the real purpose of legislation was in excepting Nassau county from the benefit of this act we may only surmise, conjecture or speculate upon. The court cannot know. Unless, however, some right of person or property is invaded by reason of this so-called discrimination, some liberty of person or action interfered with, property taken or vested right destroyed, its action is beyond the review of the courts. Clearly, the inhabitants of one portion of the state have no vested right to have the same kind of school system as those of another portion, and, therefore, no personal liberty or liberty of action to attend the schools of the state is unlawfully interfered with. No school property or vested right in school property is taken or destroyed, for such school property is still in the people and is merely transferred to and held by a new board in trust for school purposes.

I have been unable to find any case in this state where any such constitutional question has been presented. I do not think the cases cited by plaintiffs' counsel are applicable here. The case of *Matter of Henneberger,* 155 N. Y. 420, involved a very different constitutional provision. There the legislature attempted by general language to provide for the construction of highways in a particular locality and the court held that although the language was general in form its purpose was plainly to evade the constitutional mandate that the legislature should not pass a private or local bill laying out highways. In that case the legislature sought by an act general in form to affect a particular locality, contrary to the constitu-

tional provision. Here, on the contrary, the legislature has passed a general act providing for a general school system in rural communities affecting all such communities, with the exception of those contained in one county. There is no inhibition against their making such an exception in our state Constitution similar to that violated by the act under review in the *Henneberger* case.

Nor do I think that the numerous cases cited by plaintiffs' counsel involving the construction of statutes enacted under the police powers of the legislature have any application. I do not think that the legislative authority over our school system is comprehended within the definition of the police powers of the state as that term is usually understood. Ordinarily that term includes the power of the legislature to enact such legislation as may be necessary to preserve public health, protect the public morals, and provide for public safety, and it is well settled that such powers must be so exercised that statutes enacted thereunder have some reasonable connection with the public welfare and apply without discrimination to all persons comprehended in the subject matter of the act; although, even in the regulation of such matters, it has been held that the legislature is authorized to apply the act to certain portions of the state and except others, and that such application will involve no violation of the Fourteenth Amendment of the United States Constitution. See *People* v. *Havnor,* 149 N. Y. 195. The court in that case said: " That amendment does not relate to territorial arrangements made for different portions of a state, nor to legislation which, in carrying out a public purpose, is limited in its operation, but within the sphere of its operation affects alike all persons similarly situated."

I am therefore convinced that those provisions of

the statute under discussion constitute a valid exercise by the legislature of its power to provide a school system, and that it violates no constitutional provision.

Plaintiffs also attack the following provision of the act:

" § 354. *Election of board of education.* 1. The first board of education of each town thereof shall be elected by the trustees and members of the boards of education of the several school districts in such town, subject to the provisions of this article. The said trustees and members of boards of education shall meet for such purpose on the second Tuesday in June, nineteen hundred and seventeen, in one of the schoolhouses in the town to be designated by the district superintendent of schools. The said trustees and members of boards of education shall organize by the election of a chairman and clerk. They shall thereupon proceed to elect members of the board of education of the town to hold office for the term specified in section three hundred and thirty-one of this article. The persons elected as members of such board shall be residents of the town and qualified electors at school meetings therein. Not more than three of the members of such board of education shall reside in the same school district, except in towns in which there are less than three school districts. The chairman and clerk of the meeting shall canvass the votes cast for the candidates for the offices to be filled and the candidate receiving a majority of the votes cast shall be elected. The chairman and clerk of the meeting shall thereupon notify the district superintendent in writing of the persons declared elected as members of said board, and the district superintendent shall give notice of such election to the persons so elected. As the terms of office of such members expire their successors shall be elected at the annual school meeting.

'' The district superintendent of schools shall call a meeting of the board of education of each town in his supervisory district, elected as above provided, on the first day of August in nineteen hundred and seventeen, at the principal schoolhouse of the town, for the purpose of organization and the transaction of any other business which may properly come before such board. Upon the election of a clerk of such board, the chairman and clerk of the meeting held for the purpose of electing members of the board of education shall file the minutes of the meeting with such clerk.''

Plaintiffs contend that this action violates section 2 of article 10 of our state Constitution. That section prescribes the method by which certain county, city, town and village officers shall be selected, and further provides that all other officers whose election or appointment is not provided for by the Constitution, and all officers whose offices might thereafter be created by law, should be elected by the people or appointed as the legislature may direct. The criticism by plaintiffs' counsel is that this statute provides for an election of the first board of trustees not by the people, but '' by the trustees and members of the boards of education of the several school districts in such town.'' On the other hand, it is contended by defendants' counsel that, although the legislature has employed the word '' election '' in this section of the act, the method actually prescribed was clearly nothing more than an appointment; that as the annual school meeting at which these boards would ordinarily be elected was held prior to the taking effect of the statute it was necessary to provide some method of electing the first board, and that method consisted in what is termed in the act '' an election '' by the trustees and members of all the several boards of education in the town. The question presented is whether

the word " election " as used in the section under review, as well as the method prescribed for such election, was an *election* within the meaning of that word employed in the constitutional provision referred to; or was it simply equivalent to an *appointment* by the boards of education of the town jointly assembled for that purpose? If it was an election as distinguished from appointment, this section of the statute cannot be upheld. In determining this question, it is necessary to consider the substance of the statute rather than its mere form. If then, we substitute for the words " elect," " elected " and " election " the words " appoint," " appointed " and " appointment," it could hardly be argued that because the statute prescribed a method of voting it was an election, rather than an appointment. Plainly, the only means by which a board of that character could make an appointment would be by voting. The substitution above referred to neither adds to nor detracts from the substance of the statute. The method pursued and the result obtained are precisely the same, whichever language is employed, and I do not think that a statute should be held unconstitutional merely because the legislature has employed the word " election " for what is plainly nothing but an appointment within the meaning of the Constitution. See *People* v. *Sturges,* 27 App. Div. 387; affd., 156 N. Y. 580; *State Board of Pharmacy* v. *Bellinger,* 138 App. Div. 12. If the method prescribed resulted in an appointment, the legislature was authorized to provide for such appointment either for full terms or temporarily.

The only remaining provisions of this statute attacked are those contained in sections 352 and 353. Section 352 provides, among other things, for an apportionment and distribution by the old trustees of the funds remaining in their hands except state moneys,

after closing up the financial affairs of the district, among the taxpayers of the district. Section 353 makes the bonded indebtedness for the several school districts affected a charge against property subject to tax for the maintenance of the schools of the town, and provides for an appraisal of school property, a credit to each district of its value after deducting the bonded indebtedness, and an apportionment and distribution of the amount credited to and among the owners or possessors of taxable property in the district in the ratio of their several assessments. The right of the legislature to alter and enlarge towns, villages and school districts, to transfer the public property affected to the newly created town, village or district, and to charge it with the outstanding indebtedness, has never, so far as I have been able to find, been questioned by any decision in this state. This power has been upheld by the United States Supreme Court. *Laramie Co.* v. *Albany Co.,* 92 U. S. 307. In my opinion such transfer of property violates no constitutional provision. No property or property right is taken away. The transfer is simply from one public authority to another, for convenience of administration.

The appraisal, apportionment and distribution among the taxpayers and owners and possessors of taxable property provided by the statute presents a different question. The precise constitutional provision claimed to have been contravened by this portion of the statute is not pointed out by the plaintiffs. Clearly neither the provision of section 1 of the Fourteenth Amendment to the United States Constitution nor section 1 of article IX, nor section 2 of article X of our state Constitution is so violated. Section 10 of article VIII which prohibits a town from giving any money or property to any individual is designed to prevent the application of public moneys to private uses. The right of the legislature to dis-

tribute these moneys and property to taxpayers, even for the purpose of equalization, is not entirely clear. I know of no similar statute in this state nor of any decision of our courts involving this precise question. In New Jersey a similar statute was held unconstitutional as devoting public funds to private use. *State ex rel. Elizabethtown Water Co.* v. *Wade,* 59 N. J. L. 78. On the other hand, similar statutes have been upheld in Massachusetts and Rhode Island. *Whitney* v. *Stow,* 111 Mass. 366; *Matter of Town Council of Cranston,* 18 R. I. 417; *Matter of School Committee, Town of Johnston,* 19 id. 279; *Matter of Cumberland,* 21 id. 576; *Matter of North Smithfield,* 26 id. 164; *Tefft* v. *Lewis,* 27 id. 9. These latter decisions in effect hold that where the purpose of such a statute is merely to equalize the burden of the new school system upon all the taxpayers of the town it does not violate any constitutional inhibition and will be upheld. My own opinion accords with this view. It seems to me only fair that the burden of this new system should be equitably apportioned among the several school districts of the town so as to secure equality as far as possible, and I know of no better way to accomplish this purpose than as provided in the statute. The criticism that it results in the payment to present taxpayers who personally made no contribution to the fund now sought to be distributed is unsound, and ignores the fact that whatever taxes were levied for school purposes were levied against property and not against the individual owners at the time and that it is the same property which is now sought to be relieved of an undue burden by the equalization provided for.

I therefore decide that the provisions of the statute in question are constitutional and valid.

Judgment accordingly.