UNION FREE SCHOOL DISTRICT No. 22 of the Towns of Hempstead and North Hempstead, Nassau County, Plaintiff, *v.* LEWIS A. WILSON, as Commissioner of Education of the State of New York, et al., Defendants.

Third Department, March 11, 1953.

*James Marshall, Frederick C. Waldeier, Copal Mintz* and *Marvin J. Block* for plaintiff.

*Charles A. Brind, Jr.,* for Lewis A. Wilson, defendant.

*Alfred J. Loew* for Central High School District No. 2, defendant.

*Ralph L. Bernstein* for Union Free School District No. 5, defendant.

*Harvey J. George* for Union Free School District No. 16, defendant.

*Michael P. Aspland* for Union Free School District No. 17, defendant.

HALPERN, J. This is a submission of a controversy as to the power of a central high school district to take over the education of seventh and eighth grade pupils, to the exclusion of the union free school districts included within the central high school district.

The defendant Central High School District No. 2 of the Towns of Hempstead and North Hempstead, Nassau County, was established by the Commissioner of Education in accordance with a resolution adopted on June 1, 1926, by the qualified electors of the four union free school districts which are parties to this submission, pursuant to sections 187 to 189-b of the Education Law then in force, as added by chapter 137 of the Laws of 1917 and as amended by chapter 451 of the Laws of 1924 and chapter 664 of the Laws of 1925.

It is stipulated that in 1926, at the time of the adoption of the resolution, most high schools provided instruction only in grades nine to twelve " and the term ' high school ' was generally understoood to refer to a four-year school ". However, section 187 of the Education Law had been amended in 1924 so as to describe the function of a central high school district as the " education of the pupils residing in such district who have completed the work of at least the first six elementary grades in the several school districts included in such central high school district " (L. 1924, ch. 451). The reference to the pupils who had " completed the work of at least the first six elementary grades " was new in the 1924 amendment. The section had theretofore referred to the function of the high school as the " secondary " education of pupils who had completed the work of the elementary grades. The amendment broadening the function of the central high school district, reflected the trend toward the division of the twelve grades into three schools, respectively, the elementary school for the first six grades, the junior high school for the seventh, eighth and ninth and the senior high school for tenth, eleventh and twelfth, to replace the older eight to four pattern with the elementary school teaching the first eight grades and the high school the remaining four.

Under the 1924 amendment, while the central high school district had the authority to establish a junior high school and to teach pupils in the seventh and eighth grades, it was not mandated to do so. The reference to pupils who had completed " *at least* " the first six elementary grades indicated that the central high school district could at its option go as low as the seventh grade in its instruction but that it was not required to go below the traditional beginning high school grade, the ninth grade.

In fact, the defendant Central High School District undertook only the traditional four-year program for its high school. The seventh and eighth grades continued to be taught by the component union free school districts. However, in other parts of the State, the central high school districts assumed responsibility for the instruction of seventh and eighth grade pupils. It was not clear under the 1924 statute whether this had the effect of excluding the component school districts from the field of seventh and eighth grade instruction. As a result, there occurred conflicts of authority between the central high school districts and the component districts.

In 1940, the Legislature created a Joint Legislative Committee (the Rapp-Coudert Committee), which studied this and other problems of the State educational system. It reported in 1944, recommending that no more central high school districts be formed and that the ambiguity in the statute governing the existing central high school districts be cleared up and the dividing line between the " sphere " of the central high school districts and that of the component school districts be clearly fixed at the completion of the work of the sixth grade.

To carry out these recommendations, the joint committee proposed a bill to repeal sections 187 to 189-b of the Education Law and to amend section 189-g of the Education Law. The committee report (N. Y. Legis. Doc., 1944, No. 54, p. 365) explained the purpose of the bill, which ultimately became chapter 325 of the Laws of 1944, as follows:

" This proposed bill is designed to accomplish two things. First, it gives the central high school board jurisdiction over the pupils residing therein who have completed the work of the sixth grade. The present law failed to clearly define the sphere of influence of each board of education. This has led to misunderstanding and confusion between the central high school board and the boards of education in the school districts included in the central high school district.

" Second, it repeals sections 187 to 189-b, inclusive; thereby eliminating the possibility of forming any future central high school districts. There are only five such school districts in the State. This type of school district reorganization is not satisfactory since it retains, as separate entities, all the school districts included in the central high school district."

Section 189-g, as amended by chapter 325 of the Laws of 1944, read in part as follows: " The board of education of central high school districts shall have jurisdiction over the pupils residing therein who have completed the work of the sixth grade and shall have the same powers and duties in respect to the school therein as a board of education of a union free school district has, under this chapter, in respect to the schools in such district."

This section became section 1903 of the present Education Law, with immaterial changes of language, in the 1947 revision of the Education Law (L. 1947, ch. 820).

In the light of the explicit statement by the committee which sponsored the amendment, it is clear beyond question that the amendment was intended to vest in the central high school

district the exclusive power and duty to provide seventh and eighth grade education for all pupils residing in the district. The amendment vests in the central high school district " jurisdiction over the pupils residing therein who have completed the work of the sixth grade ", terminology which does not appear elsewhere in the Education Law. This special terminology, giving the board of a central high school district jurisdiction not only over certain schools in the district but over the pupils themselves " who have completed the work of the sixth grade ", leaves no doubt as to the exclusive nature of the board's jurisdiction.

Despite the adoption of the 1944 amendment, the defendant Central High School District did not undertake instruction in the seventh and eighth grades. On July 15, 1949, the Board of Education of Union Free School District No. 16 of the Town of Hempstead, Nassau County, one of the component districts, adopted a resolution giving notice " that after September 1, 1950, it would not have facilities for students of the 7th and 8th grades " and calling upon the central high school district to take over such instruction. Prolonged correspondence ensued with the Commissioner of Education and finally the commissioner held a hearing on notice and, on June 12, 1952, the commissioner made an order directing the defendant central high school district to " assume jurisdiction of the instruction of the children of the seventh and eighth grades residing within the boundaries of said Central High School District " and " to furnish me with a plan or program under which it will carry out my directive herein ". This is the order, the validity of which is in controversy here.

The plaintiff, and one of the defendant union free school districts which joins with the plaintiff, make two contentions: (1) that the central high school district has no right to assume jurisdiction over the pupils in the seventh and eighth grades without a further vote of the electors of the district and (2) that even if such jurisdiction were rightfully assumed by the central high school district, it would not be exclusive and that the union free school districts embraced within the central high school district would still be free to give instruction in the seventh and eighth grades.

As to the first contention, there is no statutory authority whatever for the holding of a further meeting of the voters to determine whether the central high school district should extend its teaching to the seventh and eighth grades. There

is no provision in the law for any meeting of voters to determine the scope of a central high school district's activities. It is argued that at the time of the vote upon the resolution for the establishment of the district in 1926, the voters had in mind a high school which would teach only the traditional four high school grades, but there had been in force at that time for over two years, the amendment adopted in 1924 explicitly providing that a central high school district could give instruction in the seventh and eighth grades. The electors voting for the establishment of the district were chargeable with knowledge of the provisions of the statute. Moreover, the 1944 amendment has made mandatory what was theretofore optional with the central high school district, and since 1944, it has been the duty of the district to assume responsibility for the seventh and eighth grades. Obviously, no vote is required in order to authorize the district to perform a function which it has been mandated to perform by the Legislature.

As to the plaintiff's said second contention, it is true that it was not clear under the 1924 amendment whether the component school districts were precluded from continuing instruction in the seventh and eighth grades, upon the central high school district's undertaking such instruction. That was one of the ambiguities in the statute which gave rise to the " misunderstanding and confusion " referred to by the Rapp-Coudert committee. If the statute had remained unchanged, the second contention of the plaintiff might have merit but, as has been pointed out above, in 1944 the ambiguity was removed and the function of teaching the seventh and eighth grades was allocated exclusively to the central high school district by vesting the district with jurisdiction over the pupils in those grades.

That the Legislature has the power to broaden the functions of a high school district or to make exclusive a function which had theretofore been nonexclusive is not open to serious question. The power of the Legislature over the educational system of the State is plenary. It may allocate functions among units of the educational system in accordance with its judgment as to what will best serve the educational interests of the State (N. Y. Const., art. XI, § 1; *Matter of Bethlehem Union Free School* v. *Wilson*, 303 N. Y. 107; *Board of Education* v. *Board of Education*, 76 App. Div. 355, affd. 179 N. Y. 556).

It may well be that if the electors of the union free school districts had realized that the new central high school district would ultimately be given exclusive jurisdiction over the seventh

and eighth grades, they would have shrunk from it as from a Frankenstein but that is an aspect of the situation with which the courts are powerless to deal. If the electors of the plaintiff district regret their having voted for a central high school district and wish to have the privilege of withdrawing from it, they must appeal to the Legislature for relief.

It is true that ever since 1944 the defendant central high school district has been in default in the performance of its statutory duty and during that period, the union free school districts have been permitted to fill in the gap and to continue to provide instruction for the pupils in the seventh and eighth grades. But in view of the unambiguous language of the 1944 amendment, this cannot be considered a binding practical construction of the statute nor can it in any way lessen the force of the statutory mandate.

In the submission of controversy, the plaintiff union free school district states that it is willing "to construct and maintain necessary facilities for children from the seventh through the twelfth grades", indicating its willingness not only to furnish instruction at the so-called junior high school level but also to provide a senior high school of its own as well. This expression of willingness cannot alter the statutory situation. A union free school district embraced within a central high school district obviously cannot be allowed to embark upon high school education on its own account; neither can it be allowed, under the present statute, to continue seventh and eighth grade instruction, once the central high school district has undertaken to perform its duty under the statute and to provide such instruction in a junior high school for the whole district.

The validity of the commissioner's order is unquestionable. It merely restates the provisions of the statute and directs the defendant central high school district to perform its duty under the statute. The plaintiff's attack, while in terms directed against the order, is really directed against the underlying statute and, as we have already indicated, the statute is clearly constitutional and valid.

No question is before us as to the validity or propriety of any particular plan or program which may have been submitted to the commissioner. The stipulation states that no action has been as yet taken by the commissioner, either approving or rejecting the proposed program.

Judgment may be entered herein in favor of the defendants, adjudging and declaring that the order of the commissioner dated June 12, 1952, is valid, without costs.

FOSTER, P. J., BERGAN, COON and IMRIE, JJ., concur.

Judgment in favor of the defendants, adjudging and declaring that the order of the Commissioner of Education, dated June 12, 1952, is valid, without costs. [See *post,* p. 1049.]