Joseph A. GavagaN, J.
Tbis is a motion by the president and secretary treasurer of the Harbor Carriers (Chenangoes), Local 1826, International Longshoremen’s Association (Ind.) to qnash and vacate identical subpoenas duces tecum served upon each of them by the Waterfront Commission of New York Harbor (hereinafter referred to as the “Commission”).
Chenangoes, whose title and function began when the Erie' Canal served as a new route for this city’s commerce, now generally perform the same work for railroads as longshoremen do for marine carriers. Unlike longshoremen, however, the chenangoes who work on the waterfront of the port of New York are not subject to the jurisdiction of the Commission.
The declared purpose of the Commission in issuing the subpoenas duces tecum is to ascertain (1) how many members of Local 1826 who had been denied registration as longshoremen because of criminal records were now employed as chen *1067 angoes on the New York-New Jersey waterfront; and (2) how many officers and agents of Local 1826 are felons and whether snch felons wield any influence upon the International Longshoremen’s Association (Ind.), the parent organization of Local 1826. On the other hand, according to the moving parties, the true purpose of the Commission in this investigation is self-aggrandizement : to extend its jurisdiction to include chenangoes employed on the waterfront.
The subpoenas duces tecum are attacked here on the ground that they were not issued in good faith since neither the type of work performed by the members of Local 1826 nor its membership are under the jurisdiction of the Commission.
In 1953, after extensive investigations and public hearings and in order to eliminate evil conditions and corrupt practices on the waterfront, the Commission was created by legislative acts in the States of New York and New Jersey. The act of the Legislature of each State involved a compact between the two States. That compact defines a longshoreman to include ‘ ‘ a natural person * * * who is employed for work at a pier or other waterfront terminal, either by a carrier of freight by water or by a stevedore [who has a contract with a carrier of freight by water to load' and unload ships] * * * physically to move waterborne freight on vessels berthed at piers, on piers, or at other waterfront terminals ” (Waterfront Commission Act, part I, art. II; L. 1953, ch. 882, § 1). Article VIII of the compact prohibits any person from working as a longshoreman in the port of New York unless he has been registered by the Commission and, in its discretion, the Commission is authorized to deny registration to a person convicted of a felony or certain misdemeanors or offenses. (L. 1953, ch. 882, § 1.) In addition, there is a prohibition against the collection of dues of other funds by any unions whose officers or agents are felons (L. 1953, ch. 882, § 8).
To implement its administrative function the Commission was granted the following broad investigatory powers: “to administer oaths and issue subpoenas throughout both states to compel the attendance of witnesses and the giving of testimony and the production of other evidence; * * * To make investigations, collect and compile information concerning waterfront practices generally within the port of New York district and upon all matters relating to the accomplishment of the objectives of this compact; # * * To make annual and other reports to the governors and legislatures of both states containing recommendations for the improvement of the conditions of waterfront labor within the port of New York district, *1068 for the alleviation of the evils described in article I and for the effectuation of the purposes of this compact.” (Waterfront Commission Act, part I, art. IY, §§ 8, 11, 13; L. 1953, ch. 882, § 1.) Under the act, witness is defined “ to mean any person whose testimony is desired in any investigation, interview or proceeding conducted by the commission pursuant to the provisions of this act ” (Waterfront Commission Act, part II, § 5-a, subd. [4]; L. 1953, ch. 882, as amd. by L. 1957, ch. 188, § 1).
The Commission contends that such powers of inquiry authorize it to issue the subpoenas duces tecum under review. To justify this exercise of its authority, the Commission asserts that it has received information that persons who have been denied registration as longshoremen because of their criminal records continue to work as chenangoes on the same piers as registered longshoremen. Chenangoes employed on the waterfront— all of whom are members of Local 1826 — and registered longshoremen, work side by side, loading and unloading the same cargo. For example, cargo for export is brought from the railroad sidings by a railroad barge to the pier where, after being unloaded by the chenangoes on the pier, it is then loaded by the registered longshoremen on a ship berthed at the same pier; and this procedure is reversed for imported freight.
Another reason advanced for the Commission’s inquiry is that it has received information with respect to the criminal records of certain officers and agents of Local 1826. Thus, one officer is alleged to have the following criminal record: convicted of attempted robbery, sentenced to from five to six years in the New Jersey State Prison; assault and robbery with gun, sentenced to two to four years in Sing Sing, execution of sentence stayed and placed on probation for two years ; book-making on two occasions and perjury, sentenced to one year in the penitentiary. A business agent of Local 1826 is alleged to have been convicted of petty larceny, suspended sentence; possession of a loaded revolver, sentenced to the New York City Penitentiary; assault in the second degree, sentenced to two and one-half to five years in Sing Sing, execution of sentence suspended and placed on probation; and robbery in the third degree, sentenced to 5 to 10 years in State Prison.
Before the issuance of the subpoenas duces tecum on the moving parties, they were served by the Commission with subpoenas. On their appearance at the Commission’s office they refused, when interrogated under oath, to disclose the information now sought by the subpoenas duces tecum.
*1069 Sanction of the subpoenas duces tectun under scrutiny on this motion turns on two tests: (1) whether the Commission is empowered to investigate the membership and activities of Local 1826 and, if so, (2) whether the documents to be produced are relevant to the investigation.
The law-making power of this State is vested in the Legislature (N. Y. Const., art. Ill, § 1). This power cannot be delegated (Darweger v. Staats, 267 N. Y. 290). There is, however, no constitutional prohibition against the delegation, of power, with reasonable safeguards and standards, to an agency or commission to administer the law as enacted by the Legislature (Matter of Federal Tel. & Radio Corp. [Corsi], 301 N. Y. 95; see, City of Utica v. Water Pollution Control Board, 5 N Y 2d 164 [and authorities cited]). The Legislature may also confer upon administrative boards and officials “ The power to investigate and examine witnesses to the end of a better discharge of their duties * * * The power here attacked is akin to the right of the Legislature1 to investigate and to subpoena and examine witnesses to the end of safeguarding public interests by appropriate legislation and which is so well established as to have passed beyond the realm of controversy.” (Dunham v. Ottinger, 243 N. Y. 423, 43A-435.)
The Commission, created by legislative acts of Few York and New Jersey, was granted power designed to eliminate evils on the bi-State waterfront. No challenge would lie if the Commission’s investigation and the subpoenas duces tecum were directed against registered longshoremen or others within its statutory jurisdiction.
The moving parties contend that their present challenge must be sustained since the Commission lacks the power to investigate or subpoena officers of a union composed of chenangoes not included in the statutory definition of longshoremen. This contention is untenable. Inquiries and issuance of subpoenas duces tecum by administrative agencies have been upheld even though the information was sought from persons not subject to the regulations of the respective agencies (Matter of Joint Legislative Comm., 285 N. Y. 1 [permitted one member of committee to require production of membership list of teachers’ union in investigation of State educational system]; Matter of Edge Ho Holding Corp., 256 N. Y. 374 [New York City Commissioner of Accounts investigating officials’ accounts not limited to examination of city employees]; Matter of Dairymen’s League Co-op. Assn., 274 App. Div. 591, affd. 299 N. Y. 634 [New York City Commissioner of Investigation authorized to obtain information pertaining to secret financial transactions *1070 between milk company and retail stores]; McGarry v. Securities & Exch. Comm., 147 F. 2d 389 [S. E. C. permitted to require production of books and records of bank not subject to its jurisdiction]).
The power of an administrative agency to investigate, like its ‘ ‘ power to require a witness to produce books and papers is necessarily limited to a ‘ proper case ’ ” (Carlisle v. Bennett, 268 N. Y. 212, 217-218). A proper case for an administrative investigation is one which may be reasonably anticipated to lead the inquiring agency to a better performance of its delegated duties. A proper case for the issuance of a subpoena duces tecum by an agency or commission is “ one where the books and papers called for have some relevancy and materiality to the matter under investigation.” (Carlisle v. Bennett, supra, p. 218.)
To recall (1) that chenangoes and longshoremen registered by the Commission work on the waterfront side by side at similar jobs, (2) that the chenangoes’ union is affiliated with the longshoremen’s international union, (3) that an officer and a business agent of the chenangoes’ union have criminal records, and (4) that the ultimate purpose of the Commission is to banish evil elements from the waterfront, leads this court to the inescapable conclusion that the Commission’s investigation into the affairs of Local 1826 is reasonable, necessary and undertaken in good faith, and that the issuance of the subpoenas duces tecum upon the officers of that union is relevant and material to the investigation.
The motion is accordingly denied in all respects. Settle order.