JOSEPH COHEN, Plaintiff, *v.* STATE OF NEW YORK et al., Defendants.

Supreme Court, Special Term, Bronx County, August 3, 1966.

*Joseph Cohen,* plaintiff in person. *Louis Grossman* for Frank G. Rosetti, defendant. *Theodore Ostrow* for John R. Crews, defendant. *Louis J. Lefkowitz, Attorney-General* (*George Zuckerman* of counsel), for State of New York, defendant. *J. Lee Rankin, Corporation Counsel,* for City of New York and others, defendants.

IRVING L. LEVEY, J. Plaintiff, a resident of The Bronx and the father of two children attending a public school maintained by the Board of Education, sues the defendants State of New

York, the City of New York, and others, on his own behalf and on behalf of those similarly situated, for a declaratory judgment declaring subdivision 2 of section 2553 of the Education Law unconstitutional.

The plaintiff alleges that under this law the members of the Board of Education are nominated by the Selection Board composed of heads of various private organizations and the nominations are submitted to the Mayor of the City of New York, who must select therefrom the names of persons for appointment to vacancies on the Board of Education.

The plaintiff further alleges that outside the City of New York in the various school districts such as Common School Districts, Union Free School Districts, Central School Districts and City School Districts of cities less than 125,000 inhabitants, and in the Cities of Rochester and Syracuse, the Education Law provides that boards of education are to be elected by the vote of the people and the population of those school districts and cities which so elect their boards of education was, in 1960, 8,147,201, compared to 7,781,984 in the City of New York.

It is plaintiff's contention that by providing for the election of boards of education in districts and cities having such population but failing to provide for such elections in the City of New York, there has been created by the State an unreasonable and unconstitutional classification of persons and citizens and that the State has denied to the plaintiff and all other residents of the City of New York the right to equal protection of the laws, in violation of section 1 of the Fourteenth Amendment to the Constitution of the United States and section 11 of article I of the Constitution of the State of New York and by such law the State of New York has disenfranchised the plaintiff and other residents of the City of New York and deprives them of rights and privileges received by other citizens, in violation of section 1 of article I of the New York State Constitution.

The plaintiff seeks judgment declaring subdivision 2 of section 2553 of the New York Education Law unconstitutional, declaring the offices of the present members of the Board of Education vacant and for relief necessary to effectuate the filling of such vacancies by election.

All of the defendants move to dismiss the complaint, and the plaintiff cross-moves for summary judgment pursuant to CPLR 3211 (subd. [c]).

In order for plaintiff's complaint to be sustained under the allegation of unconstitutionality, based upon the alleged violation of section 1 of article I of the State Constitution, he must show that there is a constitutional or statutory provision that

members of the Board of Education are to be elected by the People.

Before there can be a deprivation of the right of franchise, it must be shown that the offices for which such election is had, are properly the subject of such election. Hence, the rights conferred by section 1 of article I of the New York State Constitution, must be construed not in isolation but together with section 1 of article II of the State Constitution which provides that the right of franchise applies to elections, "for all offices that now are or hereafter may be elective by the people".

Plaintiff has shown no constitutional or statutory authority indicating that the officers of the boards of education are to be elected. Moreover, section 1 of article XI of the New York State Constitution sets forth: "The legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated." The Appellate Division has held that "the power of the Legislature over the educational system of the State is plenary. It may allocate functions among units of the educational system in accordance with its judgment as to what will best serve the educational interests of the State". (*Union Free School Dist. No. 22* v. *Wilson,* 281 App. Div. 419, 424.)

This power granted to the Legislature is unrestricted within, of course, the confines of the State and Federal Constitutions (*Adler* v. *Deegan,* 251 N. Y. 467; *Matter of McAneny* v. *Board of Estimate and Apportionment of City of N. Y.,* 232 N. Y. 377).

Although there is no case in this jurisdiction directly in point on the question of the right of the Legislature to determine the selection of the Board of Education in any particular manner, it has been held that there is no constitutional right to vote on the question of consolidation of school districts by the Legislature (*Johnson* v. *Parsons,* 207 Misc. 107, affd. 285 App. Div. 601).

I find that the Legislature under the plenary power granted by section 1 of article XI of the New York State Constitution has the right to provide for the selection of the New York City Board of Education in the manner set forth in section 2553, subdivision 2 of the Education Law (78 C. J. S., Schools and School Districts, § 107; 47 Am. Jur., Schools, § 30). I further find that the plaintiff has failed to show any legal authority that the officers of the Board of Education must be elected.

Having thus found that the voters of the City of New York have no constitutional right to directly elect members of the Board of Education, it follows that there is no merit to plaintiff's contention that under subdivision 2 of section 2553 of the

Education Law, there is a mandatory provision for selection by the Mayor from nominees offered by the Selection Board thus nullifying any indirect voice the voter may have through his elected representative, the Mayor of the City of New York.

The second attack on subdivision 2 of section 2553 of the Education Law is based upon the plaintiff's claim that by permitting Boards of Education to be elected by the vote of the People in school districts and cities having a population of 8,147,201 and directing the Board of Education in the City of New York with a population of 7,781,984 to be appointed in the manner prescribed by such section violates the equal protection clause of both the Federal and State Constitutions.

Plaintiff, of course, must rebut the presumption of constitutionality of the legislative enactment under consideration and the plaintiff must show that the classification established by the Legislature in providing for the election of some Boards of Education and the appointment of others is a classification which is arbitrary and unreasonable. The landmark decision of *Lindsley* v. *Natural Carbonic Gas Co.* (220 U. S. 61) has clearly set forth the rules by which a legislative enactment which treats similarly situated citizens differently is tested when a claim arises that the law violates the equal protection clause of the United States Constitution. The statute in question meets the test so enunciated.

There are ample, reasonable bases for the establishment by the Legislature of both elected and appointed Boards of Education in different areas of the State, and the factors warranting such distinction are numerous.

Except for the "Big 6" city school districts of New York, Buffalo, Albany, Yonkers, Rochester and Syracuse which are coterminous with the city boundaries, the remaining 991 school districts cross town, village, and county boundaries. More than one half of the central and union free school districts are located in more than one county. It would therefore be almost impossible to provide for appointment of boards in such districts not wholly within any political subdivision. Moreover, the "Big 6" city school districts are not financially independent, but rely on their own city legislative bodies for financing. The other school districts are permitted to levy taxes and to incur indebtedness so that they are not dependent on their political subdivision in connection with their fiscal affairs. It follows from these facts that the Legislature was reasonable and not arbitrary in enacting legislation permitting the residents of these financially independent school districts to elect their Boards of Education. Plaintiffs claim of geographi-

cal discrimination regarding the Cities of Syracuse and Rochester which elect their boards is without merit. State legislation concerning education affecting only certain political subdivisions has been held immune from attack based upon geographical classification. YOUNG, J., in holding that a section of the Education Law which established town boards of education in all counties except Nassau was not an ureasonable classification, stated in *Brown* v. *Bunselmeyer* (101 Misc. 625, 629–630): " It is not for the courts to determine whether the legislative reason for the exclusion of one county from the provisions of the act and the inclusion of another, apparently similarly situated, is good or bad. To attempt such review opens a wide field of pure speculation. To the Legislature has been entrusted power to provide ' for the maintenance and support of a system of free common schools, wherein all the children of this State may be educated ' * * * and it is clearly within its province to provide the necessary legislation to accomplish that purpose. Clearly, this constitutional provision does not require it to provide the same system and organization for each locality in the state."

Finally, the state of facts which were in existence at the time of its enactment more than reasonably sustain the Legislature's passage of subdivision 2 of section 2553 of the Education Law. Grave conditions affected the school system in New York City at the time of the enactment of this law. Section 1 of chapter 971 of the Laws of 1961 enunciated:

" Section 1. Legislative findings. The conditions existing in the school system of the City of New York have shaken public confidence, cause the legislature grave concern and call for prompt corrective action. These conditions include
— irregularities in the school construction program
— serious hazards in school buildings due to inadequate maintenance and improper repairs
— instances of corruption among employees
— staggering administrative complexities and needless red tape. The commissioner of education has warned that this is a time of crisis for the New York city schools and has urged prompt corrective action. The educational well-being of almost one million children is directly affected ".

Accordingly, I find that subdivision 2 of section 2553 of the Education Law is not violative of the equal protection clauses of the State or Federal Constitution.

For the foregoing reasons, the defendants' motions to dismiss the complaint are granted and plaintiff's motion for summary judgment is denied.