OPINION OF THE COURT
Alan D. Oshrin, J.
In this action for declaratory and injunctive relief, the plaintiffs maintain that the manner in which members of the Board of Regents are elected pursuant to the alternative joint ballot provision of section 202 (1) and (2) of the Education Law violates their right to a bicameral legislative system as established by the State Constitution which vests the Legislature with nondelegable appointment authority over the Board of Regents; eviscerates the voting power of State Senators, depriving the plaintiffs of their State and Federal constitutional rights to be heard and to participate in government through their duly elected representatives; violates the plaintiffs’ rights to proportional representation by permitting a malapportioned joint body of the Legislature to control State educational policy; violates the rule of one-person one-vote; and violates the Guarantee Clause of the United States Constitution. The plaintiffs seek judgment declaring as unconstitutional under the State and/or Federal Constitutions that portion of section 202 (1) and (2) of the Education Law which permits the election of Regents by joint ballot, as violative of the plaintiffs’ right to a bicameral Legislature, as violative of the plaintiffs’ rights to be heard and to participate in the formulation and ef-fectuation of State educational policy through elected representatives to the Senate, as violative of the plaintiffs’ right to one-person one-vote and to proportional representation, and as violative of the plaintiffs’ right to a republican form of government; declaring null and void the election of the defendants Carl T. Hayden, Edward J. Meyer, Carlos R. Carballada, Diane O’Neill McGivern, Saul B. Cohen, Robert M. Bennett, Robert M. Johnson, Peter M. Pryor, Anthony S. Bottar, Merryl H. Tisch, Harold O. Levy, Ena L. Farley, Geraldine Chapey, and Ricardo Enrique Oquendo as Regents to the Board of Regents, as well as any other Regent hereinafter elected by “joint ballot” pursuant to section 202 (1) and (2) of the Education Law; prohibiting the defendant, Alexander F. Treadwell, from accepting and filing the oath of office required to be taken by *411 Geraldine Chapey and Ricardo Enrique Oquendo, or any other Regent elected by “joint ballot” pursuant to section 202 (1) and (2) of the Education Law before they may enter their duties; and prohibiting the defendants Carl T. Hayden, Edward J. Meyer, Carlos R. Carballada, Diane O’Neill McGivern, Saul B. Cohen, Robert M. Bennett, Robert M. Johnson, Peter M. Pryor, Anthony S. Bottar, Merryl H. Tisch, Harold O. Levy, Ena L. Farley, Geraldine Chapey, and Ricardo Enrique Oquendo from assuming the office or continuing to serve in the office of the Board of Regents.
The defendants, Alexander F. Treadwell, as Secretary of State, and the State of New York, have moved pursuant to CPLR 3211 (a) (7) to dismiss the complaint as to such defendants for failure to state a cause of action. The defendants Carl T. Hayden, Edward J. Meyer, Carlos R. Carballada, Diane O’Neill McGivern, Saul B. Cohen, Robert M. Bennett, Robert M. Johnson, Peter M. Pryor, Anthony S. Bottar, Merryl H. Tisch, Harold O. Levy, Ena L. Farley, Geraldine Chapey, and Ricardo Enrique Oquendo, as Regents of the Board of Regents of the University of the State of New York, and for the Board of Regents of the University of the State of New York have moved pursuant to CPLR 3211 (a) (3) and (7) to dismiss the complaint as to such defendants. The plaintiffs have moved pursuant to CPLR 3211 (c) to treat the motions to dismiss as motions for summary judgment and for summary judgment. Upon the January 5, 1999 oral argument the parties consented to the court’s treating the various motions as for summary judgment.
At the oral argument, the-court expressed its concerns that the Assembly and the Senate were necessary parties to this action and invited counsel to submit papers on the issue. By decision dated March 22, 1999, the court directed that a copy of the order, together with the summons and second amended complaint, were to be served by the plaintiffs upon the presiding officer of the Senate of the State of New York, and the presiding officer of the Assembly of the State of New York; that each body would be afforded a period of 30 days from the date of service to inform the court, upon notice to all counsel who have appeared, as to the intention of each body concerning the question of whether that body wishes to participate in this litigation. By letter dated April 12, 1999, William F. Collins, counsel to the Majority, advised the court that the Assembly declines the court’s invitation to participate in the proceeding. By affirmation dated April 28, 1999, Kenneth E. Riddett, exec *412 utive counsel to the Majority, states that the Senate declines to participate as a party but, on behalf of the Senate Majority, joins the plaintiffs in their request for relief.
At the outset the court notes that this court, as a separate but equal partner in our democratic process, has a defined role in reviewing the actions of the legislative branch of government (see, Methodist Hosp. v State Ins. Fund, 117 Misc 2d 178 [1983], affd 102 AD2d 367 [1984], affd 64 NY2d 365 [1985], appeal dismissed 474 US 801 [1985]). This role is limited by the simple but well-founded presumption that an act of the Legislature is constitutional and that this presumption can be upset only by proof persuasive beyond a reasonable doubt (see, People v Tichenor, 89 NY2d 769 [1997]; Hotel Dorset Co. v Trust for Cultural Resources, 46 NY2d 358 [1978]; Methodist Hosp. v State Ins. Fund, 102 AD2d 367, supra). The presumption of constitutionality that favors all legislative enactments is a strong one (see, Paterson v University of State of N. Y., 14 NY2d 432 [1964]; Methodist Hosp. v State Ins. Fund, 102 AD2d 367, supra). As was cogently stated by Judge Cooke in his dissent in Sgaglione v Levitt (37 NY2d 507, 515 [1975]): “Initially, we must recognize that this constitutional challenge, as all others, must be weighed with full recognition of certain thoroughly settled principles. Every legislative enactment is clothed with an exceedingly strong presumption of constitutionality [citations omitted], accompanied by a further presumption that the Legislature has investigated and found facts necessary to support the legislation [citations omitted]. The party alleging unconstitutionality has a heavy burden, one of demonstrating the infirmity beyond a reasonable doubt, and only as a last resort will courts strike down legislative enactments on the ground of unconstitutionality [citations omitted].” Finally, the court notes that in accord with the presumption of constitutionality, courts are required to avoid interpreting a statute in a way that would render it unconstitutional if such construction can be avoided and to uphold the legislation if any uncertainty about its validity exists (see, National Assn. of Ind. Insurers v State of New York, 89 NY2d 950 [1997]; Alliance of Am. Insurers v Chu, 77 NY2d 573 [1991]).
The court will now set forth the statutory provisions at issue. Section 202 (1) of the Education Law provides in pertinent part that “Each regent shall be elected by the legislature by concurrent resolution in the preceding March, on or before the first Tuesday of such month. If, however, the legislature fails to agree on such concurrent resolution by the first Tuesday of *413 such month, then the two houses shall meet in joint session at noon on the second Tuesday of such month and proceed to elect such regent by joint ballot.”
Section 202 (2) of the Education Law provides in pertinent part that “A vacancy in the office of regent for other cause than expiration of term of service shall be filled for the unexpired term by an election at the session of the legislature immediately following such vacancy in the manner prescribed in the preceding paragraph, unless the legislature is in session when such vacancy occurs, in which case the vacancy shall be filled by such legislature in the manner prescribed in the preceding paragraph, except as hereinafter provided. However, if such vacancy occurs after the second Tuesday in March and before a resolution to adjourn sine die has been adopted by either house, then the vacancy shall be filled by concurrent resolution, unless the legislature fails to agree on such concurrent resolution within three legislative days after its passage by one house, in which case the two houses shall meet in joint session at noon on the next legislative day and proceed to elect such regent by joint ballots; provided, however, that if the vacancy occur after the adoption by either house of a resolution to adjourn sine die, then the vacancy shall be filled at the next session of the legislature in the manner prescribed in the preceding paragraph.”
The court will now set forth the constitutional provisions at issue. Article XI, § 1 of the New York Constitution provides “The legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated.”
Article XI, § 2 of the New York Constitution provides “The corporation created in the year one thousand seven hundred eighty-four, under the name of The Regents of the University of the State of New York, is hereby continued under the name of The University of the State of New York. It shall be governed and its corporate powers, which may be increased, modified or diminished by the legislature, shall be exercised by not less than nine regents.”
Article III, § 1 of the New York Constitution provides “The legislative power of this state shall be vested in the senate and assembly.”
Article III, § 14 of the New York Constitution provides in pertinent part “[N]or shall any bill be passed or become a law, except by the assent of a majority of the members elected to each branch of the legislature.”
*414 The thrust of the plaintiffs’ arguments is as follows:
1. Only the Senate and Assembly acting as separate entities, bicamerally, constitute the Legislature under article XI, § 2 of the New York Constitution.
2. Article XI, §§ 1 and 2 of the New York Constitution give to the Legislature plenary power over the Regents.
3. Because the Regents, pursuant to section 207 of the Education Law, have legislative power, a Regent can only be appointed by the Legislature.
4. The authority to elect or appoint Regents is constitutionally derived and may not be delegated.
5. The joint ballot alternative for electing Regents contained in section 202 (1) of the Education Law, wherein the Senate and Assembly meet in joint session as a single body, violates article XI, § 2 of the New York Constitution because the Senate and Assembly meeting in joint session does not constitute the Legislature.
As noted above, article III, § 1 of the New York Constitution provides that “[t]he legislative power of this state shall be vested in the senate and assembly.” Also as noted above, article III, § 14 of the New York Constitution provides, in pertinent part, that no “bill be passed or become a law, except by the assent of a majority of the members elected to each branch of the legislature.” In Matter of Anderson v Krupsak (40 NY2d 397 [1976]), where the Court of Appeals was asked to determine whether a joint session was duly convened and what constitutes a quorum under the joint ballot alternative of section 202 of the Education Law, several observations were made. At one point the Court of Appeals noted (at 405): “[c]ertainly, once the joint session was convened, the Legislature, sitting as a unicameral body, could have agreed upon a set of rules governing it.” At another point, the Court of Appeals noted (at 405): “Once the joint session had been convened, the Senate and Assembly were no longer separate bodies of the Legislature, but were instead merged into a unicameral body, where a quorum was simply a majority of the total membership of the unicameral body, without regard to whether those members come from the Senate or the Assembly.” Finally, the Court of Appeals noted (at 406): “In addition, the highest courts in other jurisdictions have stated that a joint session is composed not of members of the two individual houses, but of members of the Legislature itself, without regard to the house to which the member was elected (Richardson v Young, 122 Tenn 471, 539), *415 that the term ‘joint session’ implies that the two houses of the Legislature meet together and commingle, acting as one body (Snow v Hudson, 56 Kan 378, 386-387), and that a quorum of a joint session composed of the two separate houses of the Legislature is simply a majority of the combined membership of the Legislature (Wilson v Atwood, 270 Mich 317, 322).”
A reading of these two constitutional provisions and the observations of the Court of Appeals establishes that there is a clear distinction between the terms “legislative power” and “Legislature.” The plaintiffs’ arguments blur this distinction. Although the plaintiffs argue that article III, § 1 provides that the Legislature of New York is comprised of two houses, the Senate and the Assembly, article III, § 1 actually provides that legislative power (that is, the lawmaking power) is vested in the Senate and Assembly. Further, a reading of article III, § 14 indicates that for the purpose of lawmaking, each branch of the Legislature must assent. The courts which have had need to address and interpret article III, § 1 have repeatedly held that this provision of the Constitution of the State of New York pertains only to the lawmaking power and function of the Legislature (see, e.g., Dorst v Pataki, 90 NY2d 696 [1997]; Matter of Levine v Whalen, 39 NY2d 510 [1976]; Matter of Koenig v Flynn, 258 NY 292 [1932]; New York Pub. Interest Research Group v Carey, 86 Misc 2d 329 [1976], affd 55 AD2d 274 [1976], appeal dismissed 41 NY2d 1072 [1977]; Novak v Town of Poughkeepsie, 57 Misc 2d 927 [1968]; Matter of Barone [Waterfront Commn.], 18 Misc 2d 1066 [1959], affd on other grounds 8 AD2d 783 [1959], affd 7 NY2d 913 [1960]; Lynch v O'Leary, 166 Misc 567 [1938]). Further, the United States Supreme Court in Hawke v Smith (253 US 221 [1920]) in interpreting a provision of the Constitution of Ohio held that legislative power meant the power to legislate in the enactment of the laws of a State, which power is derived from the people of the State.
The plaintiffs’ interpretation of the above-noted observations of the Court of Appeals in Anderson (supra) is that the Court of Appeals held that a joint meeting of the members of the Legislature does not constitute a convening of the Legislature. This court cannot agree. This court opines that a plain reading of each of the above-noted passages reveals that the Court of Appeals considered the Legislature sitting as a unicameral body to be the Legislature and that a joint session is composed of members of the Legislature itself. It appears that the teaching of Anderson is that whether sitting bicamerally or unicam-erally, the Legislature is the Legislature. The court notes, *416 however, that although the Senate and Assembly, sitting unicamerally as a single body, continues to constitute the Legislature, and as such, may as provided by section 202 of the Education Law elect Regents, the Senate and Assembly sitting unicamerally cannot exercise legislative power and pass a bill into law.
In this regard, the court notes that the United States Supreme Court in Immigration & Naturalization Serv. v Chadha (462 US 919 [1983]), in addressing the bicameral requirement of article I, §§ 1 and 7 of the United States Constitution, observed that the requirement goes to the exercise of legislative power, the lawmaking function, and that not every action taken by either house is subject to bicameralism.
It is well settled that the Legislature may not delegate its fundamental lawmaking powers and functions or policymaking choices to other bodies (see, e.g., Matter of Citizens for Orderly Energy Policy v Cuomo, 78 NY2d 398 [1991]; Matter of Levine v Whalen, 39 NY2d 510, supra; Burke v Kern, 287 NY 203 [1941]). It is equally well settled that there is no constitutional prohibition against the legislative delegation of power, with reasonable safeguards and standards to an agency or commission to administer the law as enacted by the Legislature (see, e.g., Matter of Levine v Whalen, 39 NY2d 510, supra; City of Amsterdam v Helsby, 37 NY2d 19 [1975]; Packer Coll. Inst. v University of State of N. Y., 298 NY 184 [1948]). Stated alternatively, a legislative act involves policymaking rather than mere administrative application and execution of existing policies (see, New York Pub. Interest Research Group v Carey, 86 Misc 2d 329, supra; Matter of City of Rochester v County of Monroe, 81 Misc 2d 462 [1974]; Smith v Lomax, 45 F3d 402 [1995]; Crymes v DeKalb County, 923 F2d 1482 [1991]). Significantly, it has been held that the exercise of the power of appointment to public office is not a function of such essentially legislative character as to fall- afoul of the constitutional presumption against delegating legislative authority (see, Lanza v Wagner, 11 NY2d 317 [1962], citing Sturgis v Spofford, 45 NY 446 [1871]; Szold v Outlet Embroidery Supply Co., 274 NY 271 [1937]). It has also been held that “[t]here is a distinction to be drawn between the functions of a Legislature, such, for instance, as choosing Senators * * * and the prescribing or enacting of a rule or direction, which must be followed and obeyed by the people of the State, called the law-making power” (Matter of Koenig v Flynn, 258 NY 292, 301, supra).
With respect to the concept of safeguards and standards when the Legislature delegates nonlawmaking functions and *417 powers, the court notes initially, that in the case at bar, inasmuch as the members of the Senate and Assembly sitting unicamerally for a joint session to elect Regents by joint ballot are the same individuals who sit as members of the Senate and Assembly bicamerally to elect Regents by concurrent resolution, such individuals having the same information, knowledge, purpose and responsibility in either capacity, there is a question as to whether the concept of safeguards and standards is germane. This said, the court makes the following observations.
Notwithstanding the fact that standards and guidelines are necessary to delimit the discretionary power of execution and administration of laws which has been delegated, it is not always necessary that the particular legislative enactment expressly detail these standards (see, Matter of City of Rochester v County of Monroe, 81 Misc 2d 462, supra). It has been held that the requisite standards may be implied by policy and purpose (see, Matter of Barton Trucking Corp. v O'Connell, 7 NY2d 299 [1959]; Matter of Bologno v O'Connell, 7 NY2d 155 [1959]; Matter of City of Rochester v County of Monroe, 81 Misc 2d 462, supra), and that such policy or purpose may be broadly stated (see, Dorst v Pataki, 90 NY2d 696, supra). It has also been held that a particular statute empowering a delegation of nonlawmaking functions is not unconstitutional for failure to provide standards of action where the limits of action may be found elsewhere in the law (see, Szold v Outlet Embroidery Supply Co., 274 NY 271, supra; Aloe v Dassler, 278 App Div 975 [1951]; Matter of City of Rochester v County of Monroe, 81 Misc 2d 462, supra). In the case at bar, the court finds that the “objects” of the University of the State of New York contained in section 201 of the Education Law; the limitation on those persons who could be Regents contained in section 202 (4) of the Education Law; and the powers to be exercised by Regents contained in section 207 of the Education Law sufficiently set forth over-all policy and purpose as well as general standards and guidelines to withstand constitutional scrutiny.
As noted above the plaintiffs argue that article XI, §§ 1 and 2 of the New York Constitution give to the Legislature plenary power over the Regents; that such power includes the appointment of Regents; and that because the authority to appoint Regents is constitutionally derived it cannot be delegated. Although it may be true that the power of the Legislature over the educational system is plenary (see, Union Free School Dist. No. 22 v Wilson, 281 App Div 419 [1953], lv denied 281 App Div *418 1049 [1953]; Board of Educ. v Helsby, 64 Misc 2d 473 [1970], revd on other grounds 37 AD2d 493 [1971]), this court has already determined that the Legislature constitutes the Legislature whether sitting bicamerally or unicamerally. As to the educational system, and with respect to an act which does not require an exercise of lawmaking powers or functions or policy-making, such as the election or appointment of Regents, a unicameral Legislature is sufficient. Where, however, lawmaking powers or functions need be exercised as with the increasing, decreasing or modification of the corporate powers of the Regents, or the change in the statutory number of Regents, a bicameral Legislature is required.
In proffering their arguments as to the constitutionality of electing Regents by joint ballot, the parties have devoted a considerable amount of energy to the term “continued” as contained in article XI, § 2. In setting forth their positions as to what was or was not continued by the constitutional provision promulgated in 1894, the focus was on whether what was continued included the manner of election or appointment of Regents. The court finds that from a plain reading of the provision the only thing that was “continued” was the corporation which was once known as “The Regents of the University of the State of New York” and which would then be known as “The University of the State of New York” and its relationship to the Legislature. It has been held that the provision of the Constitution of the State of New York continuing the corporation of the Regents of the State of New York under the name The University of the State of New York (formerly art IX, § 2, now art XI, § 2) confirms the rights and powers of the corporation theretofore existing and to confer upon the Legislature unlimited discretion to deal with the matter of education subject only to the general fundamental restrictions contained in the Constitution (see, Institute of Metropolis v University of State of N. Y, 159 Misc 529 [1936], affd 249 App Div 33 [1936], affd 274 NY 504 [1937]; see also, Shanker v Regents of Univ. of State of N. Y., 27 AD2d 84 [1966], affd 19 NY2d 951 [1967]). There is, therefore, no basis to infer that article XI, § 2 was meant to continue anything more than the existence of the corporation and its then existing rights and powers. Specifically, there is no basis to infer that article XI, § 2 was meant to “continue” the manner in which Regents were elected or appointed. The court having found that article XI, § 2 was not meant to continue the previous methods for electing Regents, the historical appointment versus filling vacancy distinction raised by the plaintiffs is of no significance.
*419 In this regard the court acknowledges the plaintiffs’ references to various colloquies from the 1894 Constitutional Convention, the year that sections 1 and 2 of article IX (now art XI) were added. A review of these excerpts reveals that the concern expressed was that the Regents not have powers beyond the control of the Legislature. As the result of these concerns the language “which may be increased, modified or diminished by the Legislature” was inserted before the terms “corporate powers” in former article IX, § 2. The chosen language for former article IX, § 2 is designed to prevent the Regents from expanding their powers or to grow as a body by its own devices, reserving such right to the Legislature. These concerns expressed at the Constitutional Convention are in accord with the court’s finding in Institute of Metropolis (supra).
As noted above, the plaintiffs argue that because the Regents have legislative power, only the Legislature, bicamerally, with the ability itself to exercise legislative power may elect or appoint a Regent. The plaintiffs offer no specific authority to support this proposition. Rather, the plaintiffs’ argument is grounded in the propositions already rejected by the court. A review of the constitutional provisions of article XI and the pertinent sections of the Education Law reveals that the only things which require the exercise of legislative power are the increase, decrease or modification of the powers accorded to the Regents (art XI, § 2) and a change in the statutory number of Regents (Education Law § 202 [1]).
Accordingly, for all the reasons discussed above, the court finds that the plaintiffs have not proffered proof, persuasive beyond a reasonable doubt, of the unconstitutionality of the joint ballot alternative for the election of Regents to rebut the presumption of constitutionality that favors section 202 of the Education Law. Accordingly, the court finds that the Legislature in enacting section 202 of the Education Law in 1947 (or the previous sections from which it was derived in 1889, 1892, 1909 and 1910) did not, by providing for the meeting of the houses in joint session to elect Regents by joint ballot, unconstitutionally delegate a legislative power or function to the unicameral Legislature which could not exercise legislative power.
As to the purpose of the joint ballot mechanism the court makes the following observations. The defendants argue that the Legislature has provided for the joint ballot to ensure that, when the primary means of making appointments fails, seats on the Board of Regents do not remain empty; that.the Regents *420 were designed to be a regionally representative body, numbering not less than nine, with wide jurisdiction over educational matters in this State, and that the joint ballot is needed to break legislative deadlocks over appointments which occasionally arise, and thus to ensure that the Regents operate according to their constitutional and legislative design. The plaintiffs argue that the defendants’ “deadlock” argument is without merit. This court does not agree. The Court of Appeals in Matter of Anderson v Krupsak (40 NY2d 397, supra), in examining that part of section 202 of the Education Law which mandates a joint session of the Legislature at noon on the second Tuesday to elect Regents, where they have not been able to elect such Regents by concurrent resolution, held that (at 406): “Only by defining quorum in this manner can there be any reasonable assurance that the purpose of section 202 of the Education Law — to insure that deadlocks in the election of Regents will be resolved — can be accomplished. To require that a majority of each house be present at the joint session would permit the statute to be too easily frustrated, particularly, as here, where the original deadlock resulted from the political division of the houses.”
At this juncture the court notes that several other issues have been raised but not vigorously pursued and not abandoned by the plaintiffs. The court will address the issues briefly. The plaintiffs argue that the joint ballot provision for electing Regents violates the rule of one-person one-vote. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution requires that representation in both houses of a State’s Legislature be substantially proportionate to the number of people represented under the principle of “one person, one vote” (see, Seaman v Fedourich, 16 NY2d 94, 102 [1965], discussing Reynolds v Sims, 377 US 533 [1964]). It has been held that the “one man, one vote” principle is not applicable to the election of members of Board of Regents (see, Mac Kenzie v Travia, 55 Misc 2d 1016 [1968]; see also, Shanker v Regents of Univ. of State of N. Y., 27 AD2d 84, supra).
The plaintiffs also argue that the joint ballot provision for electing Regents violates the Guarantee Clause of the United States Constitution. The Guarantee Clause requires that “[t]he United States shall guarantee to every State in this Union a republican form of government” (US Const, art IV, § 4). Inasmuch as the republican form of government guaranteed by the Constitution “contemplates representative government” (In re Advisory Opn. to Governor [Ethics Commn.], 612 A2d 1, 16 *421 [RI 1992]) and inasmuch as the distinguishing feature of a republican form of government is the “right of the people to choose their own officers for governmental administration, and pass their own laws in virtue of the legislative power reposed in the representative bodies” (In re Duncan, 139 US 449 [1891]) there is no basis for a Guarantee Clause claim in the case at bar.