Jasen, J.
Petitioners, Republican members of the New York State Senate and Assembly, commenced this article 78 proceeding to set aside the Legislature’s election of three Regents of the University of the State of New York. The Supreme Court granted the relief requested, annulling the determination of the Lieutenant Governor and the Speaker of the Assembly that Jorge L. Batista, Mary Alice Kendall and Louis E. Yavner were duly elected Regents of the University of the State of New York, annulling the certificates of election executed in conjunction with that determination, and enjoining the three from acting as Regents. Upon appeal, the Appellate Division, after converting the article 78 proceeding into an action for a declaratory judgment, modified the judgment, on the law. It reversed that portion of the judgment annulling the determination and the certificates and enjoining and prohibiting the three from acting as Regents; it dismissed so much of the petition as requested relief against the three Regents and Theodore Black, the Chancellor of the Board of Regents; and it declared that a quorum of the joint session had been present on March 11, 1975, but that the joint session had not been duly convened and was therefore invalid. Cross appeals from that order have been taken by the Lieutenant Govenor and the Speaker of the Assembly, by the three challenged Regents, and by the original petitioners. For the reasons which follow, we would reverse that order and dismiss the petition.
In 1975 there occurred three vacancies on the State Board of Regents. The Assembly and the Senate, each controlled by different political parties, were unable to fill the vacancies by concurrent resolution on or before March 4, 1975. Therefore, pursuant to section 202 of the Education Law, it became necessary for the two houses to meet in joint session at noon on March 11, 1975, to fill the vacancies by joint ballot.[1] To this *401 end, on March 11 the Assembly adopted and referred to the Senate a resolution proposing a joint session at noon of that day.[2] Upon receiving word that the Senate was not yet ready to meet to elect three Regents, the Assembly proceeded to consider other matters on its calendar. Meanwhile, the Senate was mired in debate over such procedural matters relative to the joint session as weighted voting, the order in which each vacant office should be considered, and the order in which members of the Senate and Assembly should vote. At approximately 1:30 p.m., the Lieutenant Governor, in her role as President of the Senate, ruled that the Senate would stand in recess. She then proceeded to the Assembly Chamber to participate in the joint session. However, after her departure there still remained a quorum in the Senate, and the Majority Leader appointed a fellow Senator to assume the chair. After some further debate, the Senate agreed upon a recess.
Upon her arrival in the Assembly Chamber, the Lieutenant Governor, at the invitation of the Assembly Speaker, called the joint session to order and dispatched a delegation to notify the Senate members that the Assembly was awaiting their presence. Apparently no Senators were in the Assembly Chamber at that time, and none arrived subsequently. Thus, after a short time, the joint session was recessed.
During this recess, at a time when the Senate also stood in recess, the leaders of both houses met to resolve this deadlock, but no progress was made. Following its recess, with the Lieutenant Governor still absent, the Senate adopted a resolution calling for adjournment of the joint session until 11:00 a.m. on the following day and also calling for the appointment *402 of a bipartisan committee to adopt rules of procedure for the joint session.[3]
This resolution was never considered by the Assembly. Instead, at approximately 5:40 p.m., the Lieutenant Governor reconvened the joint session in the Assembly Chamber. It was at this session that Jorge L. Batista, Mary Alice Kendall and Louis E. Yavner were nominated and elected Regents of the University of the State of New York. At all relevant times this joint session was attended by fewer than half of the 60 Senators but by more than half of the 150 Assemblymen.[4] Candidates Batista and Kendall each received 113 votes, and candidate Yavner received 114 votes.
We are asked to determine whether this joint session was duly convened and whether a quorum was present at the time of the election. Preliminarily, however, we must decide a threshold question; that is, whether this case involves merely an internal administrative dispute- within the Legislature which the courts should refrain from entertaining. In urging this position, the three Regents place particular reliance upon Matter of Gottlieb v Duryea (38 AD2d 634, aifd without opn 30 NY2d 807, cert den 409 US 1008). In that case Gottlieb, a *403 member of the Assembly, challenged the refusal by the Speaker of the Assembly to permit expenditure of public funds for the mailing of a letter to 450 of Gottlieb’s constituents. In reversing a judgment of Special Term in which it ordered the mailing to be permitted, the Appellate Division held that judicial intervention would contravene the fundamental constitutional principle of separation of powers among the three branches of government. It stated that this dispute was "an internal matter to be handled within the procedures of the Legislature. The courts should not review every internal dispute between its members since, to do so, would frustrate the legislative process and violate said constitutional principle [of separation of powers]. This is not a case of an overriding constitutional question, as in Powell v. McCormack (395 U. S. 486) and Bond v. Floyd (385 U. S. 116), wherein the internal administration of a legislative body was not in issue.” (38 AD2d, at p 635.) In our view, Gottlieb lends no support to this argument. There can be little doubt that Gottlieb involved a purely internal matter properly left to the Legislature. This case, on the other hand, involves significant questions of law relative to section 202 of the Education Law. Moreover, this challenge to the election of these Regents not only placed a cloud over the legitimacy of the office each held, but also raised a question as to the validity of actions taken by the Board of Regents in which these three Regents participated. Thus, this case involves more than just a question of compliance with section 202 of the Education Law; it involves the more significant question whether these three persons legally held and exercised the powers of the important office of Regent of the University of the State of New York. Either of these considerations alone, and certainly both when taken together, make it clear that this is far more than a matter of internal administration within the Legislature.
The rule articulated in Powell v McCormack (supra), Matter of Gottlieb v Duryea (supra) and similar cases has come to be known as the "political question doctrine”, a regrettable misnomer to the extent that it implies that a case which involves a political question is not justiciable. We are constantly asked to decide cases with obvious political overtones. Legislative apportionment (e.g., Matter of Schneider v Rockefeller, 31 NY2d 420), legislative responses to New York City’s financial crisis (e.g., Sgaglione v Levitt, 37 NY2d 507; Wein v State oNew York, 39 NY2d 136), enactment and payment of allow *404 anees for additional services to legislators (New York Public Interest Research Group v Steingut, 40 NY2d 250), and of course, countless election matters are but a few examples of situations in which this court has passed on questions of law despite the existence of political questions or at least serious political connotations. The mere existence of such overtones has not and will not serve to prevent this court from passing on questions of law which are presented to us. Whenever faced with questions of law, we always have, and shall continue to, decide those questions, regardless of the political context in which such questions arise. To do otherwise would only undermine the function of the judiciary as a coequal branch of government. Thus, the fact that this case would not have arisen but for the political division of the Senate and Assembly does not prevent us from determining whether the joint session in question was conducted in accordance with section 202 of the Education Law.[5]
On the merits, we turn first to the question of whether the joint session was duly convened. We conclude that it was. Section 202 of the Education Law specifically provides that the two houses "shall meet in joint session” at noon on the second Tuesday of March to elect Regents where they have not been able to elect such Regents by concurrent resolution (emphasis added). No formal resolution, as such, by either branch of the Legislature was necessary to convene this joint session mandated by law. Once the specified hour had passed, we think the procedure utilized here was sufficient to convene the joint session. Following receipt of word that the Assembly was ready to proceed in joint session, the Lieutenant Governor, acting as President of the Senate, adjourned the Senate and announced her intention to convene the joint session of the Legislature in the Assembly Chamber. Upon arrival in that chamber, at the invitation of the Speaker, she did convene the joint session. Thus, there can be no question that both houses had not only constructive notice, by virtue of the statute, but also actual notice that the joint session, required by section 202, was being called at that time.[6] The statute *405 requires no more. As with "stated meetings” generally, notice is to be presumed. (59 Am Jur 2d, Parliamentary Law, § 4, pp 320-321.) To be sure, the houses, by joint resolution or by vote of the Legislature sitting in joint session, could have postponed, for a reasonable time, the actual election of the Regents. However, in the absence of such agreement, either house could insist upon convening the joint session once the specified hour had passed.
A matter related to this issue concerns the fact that no joint resolution had been passed specifying the rules which would govern the joint session. Certainly, once the joint session was convened, the Legislature, sitting as a unicameral body, could have agreed upon a set of rules governing it. However, there is no such requirement, statutory or otherwise, and where no such rules have been agreed upon, a joint session is governed by the generally accepted rules of parliamentary procedure which flow from general principles of common law. (59 Am Jur 2d, Parliamentary Law, § 3, p 319.)
Turning to the issue of whether there was a quorum present for the election of Regents, we reject the claim that in order for there to be a quorum of the joint session there must be present a majority of the total number of Senators and also a majority of the total number of Assemblymen.[7] Once the joint session had been convened, the Senate and Assembly were no longer separate bodies of the Legislature, but were instead merged into a unicameral body, where a quorum was simply a majority of the total membership of the unicameral body, without regard to whether those members come from the Senate or the Assembly. In an analogous situation, the Court for the Correction of Errors stated that when the board of supervisors and the Judges of the Court of Common Pleas met in a joint meeting to elect a county treasurer of Chautauqua County, the two bodies merged into one body for that purpose, and that even if one of the two groups refused to participate at all, a quorum of the joint meeting was simply a majority of the single body which resulted from this merger. (Whiteside v People ex rel. Upham, 26 Wend 634, 641; see, also, Matter of *406 Bogaskie, 58 Misc 243, 246-247; People ex rel. Hawes v Walker, 23 Barb 304, 312.) In addition, the highest courts in other jurisdictions have stated that a joint session is composed not of members of the two individual houses, but of members of the Legislature itself, without regard to the house to which the member was elected (Richardson v Young, 122 Tenn 471, 539), that the term "joint session” implies that the two houses of the Legislature meet together and commingle, acting as one body (Snow v Hudson, 56 Kan 378, 386-387), and that a quorum of a joint session composed of the two separate houses of the Legislature is simply a majority of the combined membership of the Legislature (Wilson v Atwood, 270 Mich 317, 322). Only by defining quorum in this manner can there be any reasonable assurance that the purpose of section 202 of the Education Law—to insure that deadlocks in the election of Regents will be resolved—can be accomplished. To require that a majority of each house be present at the joint session would permit the statute to be too easily frustrated, particularly, as here, where the original deadlock resulted from the political division of the houses. (See Richardson v Young, 122 Tenn 471, 541, supra; Snow v Hudson, 56 Kan 378, 387, supra.)
Accordingly, the order of the Appellate Division should be reversed and the petition dismissed.[8]

. Section 202 of the Education Law provides, in relevant part, as follows: "Each regent shall be elected by the legislature by concurrent resolution in the * * * March [preceding the commencement of the term of office on April 1], on or before the first Tuesday of such month. If, however, the legislature fails to agree on such concurrent *401 resolution by the first Tuesday of such month, then the two houses shall meet in joint session at noon on the second Tuesday of such month and proceed to elect such regent by joint ballot.” The first and second Tuesdays of March, 1975, were March 4 and March 11.

. This resolution reads in full:
"RESOLVED, (If the Senate concur), That at the hour of twelve o’clock noon today, the Senate and Assembly meet in joint assembly in the Assembly Chamber for the purpose of nominating and electing by joint ballot a Regent-at-Large of the University of the State of New York in place of Edward M. Warburg, County of New York, Regent-at-Large, whose term has expired.
"Also, for a Regent of the University of the State of New York in place of Joseph W. McGovern, County of Bronx, First Judicial District, who has resigned.
"Also, for a Regent of the University of the State of New York in place of Helen B. Power, County of Monroe, Seventh Judicial District, who has resigned.”

. The Senate resolution reads as follows:
"Resolved (if the Assembly concur), That the Senate and Assembly being constituted in joint session on this day, March eleventh, nineteen hundred seventy-five, in joint session in the Assembly Chamber, for the purpose of nominating and electing, by joint ballot, regents of the University of the State of New York in the following order:
"(i) A Regent of the University of the State of New York in place of Joseph W. McGovern, county of Bronx, First Judicial District, who has resigned;
"(ii) A Regent of the University of the State of New York in place of Helen B. Power, county of Monroe, Seventh Judicial District, who has resigned; and
"(iii) A Regent-at-large of the University of the State of New York in place of Edward M. M. Warburg, county of New York, Regent-at-large, whose term has expired; and
"Whereas, It is necessary for the proper conduct of the joint session on March twelfth, nineteen hundred seventy-five that rules of procedure be adopted, be it further resolved that a bipartisan committee consisting of one member appointed by the Temporary President of the Senate, one member appointed by the Speaker of the Assembly, one member appointed by the Minority Leader of the Senate and one member appointed by the Minority Leader of the Assembly, be immediately constituted; and be it further
"Resolved (if the Assembly concur), That the joint session of March eleventh, nineteen hundred seventy-five adjourn and meet at 11 A.M. on March twelfth, nineteen hundred seventy-five as aforesaid and that the procedures to be followed at such joint session be those recommended by the bipartisan committee herein created.”

. Twenty-six Senators and 148 Assemblymen were present.

. We attach little significance to the fact that this case involves the construction of a statute, rather than a constitutional provision as in Powell v McCormack (395 US 486, supra).

. It should be noted that the proposed joint resolution passed by the Senate acknowledged the existence of the joint session, by referring to the Senate and Assembly as "being constituted in joint session on this day * * * in joint session in the Assembly Chamber”. (Emphasis added.)

. The joint session was composed of 60 Senators and 150 Assemblymen, or 210 members. A majority of this number is 106. A quorum of the Senate is 31, and of the Assembly, 76. While 148 Assemblymen were present, only 26, five short of a majority, of the members of the Senate were in attendance. However since 174 legislators attended, there was clearly a majority of the total number of members of the joint session.

. Since we agree that the petition should be dismissed, it is not necessary for us to determine whether an article 78 proceeding or an action for a declaratory judgment is the proper procedural vehicle in which to challenge an election under section 202 of the Education Law.