*277 OPINION OF THE COURT
Joseph Harris, J.
This action seeks a declaratory judgment pursuant to CPLR 3001, and preliminary injunctive relief pursuant to CPLR 6301. By this legal vehicle plaintiffs seek a declaration that a joint ballot to fill a vacancy in the Office of State Comptroller, pursuant to section 41 of the Public Officers Law, is invalid where taken other than at a joint session convened by a concurrent resolution agreed upon and adopted separately by a majority of all elected members of both the Senate and the Assembly; declaring that the "joint session” of May 5, 1993, was improperly convened, and that the "joint ballot” taken thereat is null and void; enjoining the Speaker of the Assembly and the Lieutenant Governor, as President of the Senate, from making any certification or commission attesting to the appointment to serve as State Comptroller of H. Carl McCall, the person purportedly appointed by "joint ballot” at the "joint session” of May 5, 1993; and directing the Secretary of State not to accept or file any certificate or commission attesting to said purported appointment, and any oath of office taken pursuant to such purported appointment, or if heretofore failed, directing the Secretary of State to strike and void such filings.[1]
By stipulation entered into by and between the attorneys for the parties herein, and "so ordered” by this court pursuant to said stipulation, and in order to speedily reach the merits of this significant controversy, it is deemed that in response to plaintiffs’ motion for a preliminary injunction returnable May 11, 1993, defendants have cross-moved to dismiss the complaint pursuant to CPLR 3211 (a), and that defendants’ papers served in opposition to plaintiffs’ motion for a preliminary injunction, including the Weprin and Shaffer affidavits and annexed exhibits, and their memorandum of law, shall be considered to have been submitted in support of such cross motion by defendants. It has further been consented that the *278 factual submissions of both plaintiffs and defendants will be considered by the court under CPLR 3211 (c), and the parties have further consented to the treatment by the court of all factual submissions as submissions on a motion for summary judgment made respectively by each party under CPLR 3211 (c), and the parties have waived their right to any further factual submissions.
THE FACTS
The relevant facts of this case are not in dispute and are as follows:
On February 18, 1993, while the Legislature was in session, State Comptroller Edward V. Regan announced his intention to resign from said Office of Comptroller, effective April 30, 1993. By letter dated April 30, 1993, effective midnight of such day, he did in fact duly resign in accordance with section 31 of the Public Officers Law, thus creating a vacancy in the Office of State Comptroller. At the time of his announced intention to resign, and at the effective time of said resignation, the State Legislature was in session.
Article V, § 1 of the New York State Constitution provides that "the legislature shall provide for filling vacancies in the office of comptroller and of attorney-general.” Public Officers Law § 41, adopted by Laws of 1909 (ch 51) and amended by Laws of 1928 (ch 91), sets forth the method adopted by the Legislature for filling a vacancy in the Office of Comptroller or Attorney-General, in furtherance of the aforesaid constitutional mandate, and recites as follows: "When a vacancy occurs or exists, other than by removal, in the office of comptroller or attorney-general, or a resignation of either such officer to take effect at any future day shall have been made while the legislature is in session, the two houses thereof, by joint ballot, shall appoint a person to fill such actual or prospective vacancy.” (Public Officers Law § 41.)
Between February 18 and April 30, and thereafter, joint and separate attempts were made by the leadership of both houses of the Legislature to reach agreement on the mode for implementing Public Officers Law § 41 and filling the anticipated, and then the actual, vacancy in the Office of Comptroller, including interviewing prospective candidates and attempting to reach an agreement on a concurrent resolution establishing a time for a joint session of the Senate and Assembly at which the "joint ballot” called for in Public *279 Officers Law §41 would take place, together with the procedures to govern the joint session, the joint ballot, and the appointment of the new Comptroller.
All to no avail! The all-important task of selecting a new Comptroller, which is the purpose of Public Officers Law § 41, was held hostage by plaintiffs, and subordinated by them, to efforts to compel the enactment of a new method for filling vacancies in the Offices of Comptroller and Attorney-General in the future, and to restructure the control and management of the New York State Employees’ Retirement System, a $55 billion public pension fund — which matters are, of course, of great significance, but irrelevant to the issues involved in the instant case. Whether or not Public Officers Law § 41 and the management of the New York State Employees’ Retirement System should be changed for future events is not the issue here. What is the issue is the filling of the current vacancy in the Office of Comptroller under the controlling statute as it now exists. The law that binds us all binds the Legislature as well until that law is changed in the regular course of legislative business.
When it became apparent that any further negotiation between the houses to reach a mutually agreeable concurrent resolution, and to fix a mutually agreeable time for a joint session between the houses for the exercise of the joint ballot necessary to fill the vacancy in the Office of Comptroller, under Public Officers Law § 41, would be fruitless, the following scenario occurred:
On Monday, May 3, 1993, the first day that the Legislature was in session following the effective resignation of Comptroller Regan, the Assembly adopted a concurrent resolution providing for a joint session of the Legislature for Wednesday, May 5, 1993, at 10:30 a.m. in the Assembly Chamber for the purpose of casting a joint ballot to fill the vacancy in the Office of Comptroller. The Assembly also adopted a resolution advising the members of the Senate of the time and place of the joint session. Copies of both resolutions were immediately transmitted to the Senate. Thereafter, and further on May 3, 1993, defendant Lieutenant Governor Stanley Lundine, as President of the Senate, and Assemblyman Saul Weprin, as Speaker of the Assembly, issued a notice of a meeting of all members of the Legislature to be held on the date and at the time and place set forth in the concurrent resolution. A copy of this notice was hand-delivered to the office of each member of the Legislature.
*280 After the adoption of the above resolutions and the issuance of the above notice, members of the Senate staff met with members of the Assembly staff. In these meetings, staff members representing the Senate Majority stated that the Senate Majority would be willing to pass a concurrent resolution calling for a joint session on May 10, 1993,[2] but only if the Assembly agreed to pass without change both the Senate’s proposed constitutional amendment for filling future vacancies in the Offices of Comptroller and Attorney-General and the Senate’s bill restructuring the State retirement system and removing the Comptroller as sole trustee.
On May 4, 1993 the meetings between Assembly and Senate staffs continued, the Senate Majority persisting in its position that the Senate would pass the concurrent resolution calling for a joint session only if the Assembly agreed to the Senate’s aforestated proposed legislation. The Assembly leadership rejected these "conditions.”
Further on May 4, 1993, Assembly counsel provided counsel copies of proposed rules for the conduct of the joint session to counsel both for the Senate Majority and Assembly Minority. Neither the Senate Majority nor the Assembly Minority raised any objections or offered any suggestions.
In a late night session on May 4, 1993, lasting into the early morning of May 5, the Senate adopted a resolution declaring the call of the joint session for May 5 by the Assembly, and any actions taken at such joint session, null and void.
On the morning of May 5, prior to the time for the convening of the joint session called for in the Assembly resolution, Speaker Weprin offered to delay the joint session if Senator Marino, Majority Leader of the Senate, would agree that the Senate Majority would participate in the joint session. Senator Marino reiterated that he would do so only if the Assembly agreed to pass the Senate Majority’s proposed legislation. Once again this condition was rejected by Speaker Weprin.
At about 10:20 a.m. on May 5, the Assembly Minority informed the Assembly Majority that the Minority would not participate in the joint session.
The joint session pursuant to the Assembly notice was convened at 11:20 a.m. on May 5. At this meeting, 123 members of the Legislature, sitting as a unicameral body, were *281 present. Thus a quorum was present.[3] At the meeting, prior to any nomination and vote on candidates, a vote was had to adopt the rules of the joint session and same were adopted. Prior to this vote, any member of the Legislature had the opportunity to debate or offer amendments to the proposed rules.
After the rules were adopted, the name of H. Carl McCall was placed in nomination. Mr. McCall received the votes of 121 members of the Legislature present, with two members abstaining, this constituting the votes of a majority of the members of the Legislature cast by joint ballot — -an absolute majority not only of the members of the Legislature present at the joint session, but an absolute majority of the entire Legislature sitting as a unicameral body.
A certificate of appointment signed by defendant Lundine as Lieutenant Governor and President of the Senate, and by defendant Weprin as Speaker of the Assembly, was thereupon issued and filed in the office of Secretary of State together with an oath of office taken by Mr. McCall, pursuant to Public Officers Law § 10.
THE LAW
Defendants contend that the above-described procedures fully comply with the requirements of section 41 of the Public Officers Law and that accordingly, pursuant to section 41 of the Public Officers Law, H. Carl McCall is the duly appointed Comptroller of the State of New York.
Plaintiffs contend that a joint ballot for the appointment of a Comptroller pursuant to section 41 of the Public Officers Law is not valid in the absence of a vote of a majority of all elected members of the Senate (and of the Assembly, separately), adopting a concurrent resolution convening a jo'nt session for the purpose of conducting such joint ballot.[4]
The arguments of the plaintiffs implicate issues of the highest constitutional and governmental order and are in no *282 way frivolous. Nevertheless, however, the decision of the Court of Appeals in Matter of Anderson v Krupsak (40 NY2d 397), involving the election by the Legislature of three Regents of the University of the State of New York, is dispositive of all relevant issues in the instant case and mandates granting of the defendants’ motion for summary judgment.
In Anderson (supra), as in the instant case, the Assembly and the Senate, each controlled by different political parties, were unable to fill the respective vacancies involved by amicable agreement. Plaintiffs attempt to distinguish Anderson (supra) upon the ground that it does not involve section 41 of the Public Officers Law, but section 202 of the Education Law, a statute plaintiffs contend is substantially dissimilar from Public Officers Law § 41. Upon closer scrutiny it can be seen that not only is the statute construed in Anderson (supra) not meaningfully distinguishable from the statute involved in the instant case, but rather it enhances the applicability to the instant case of the conclusions reached by the Court of Appeals in Anderson.[5]
Thus, respecting the election of a Regent there are two alternative methods, the second coming into play only following untimely failure to utilize the first. Election by joint ballot at a joint session becomes the operative method of election only upon failure of the Assembly and the Senate to elect, prior to the first Tuesday of March preceding the commencement of the term of office on April 1, by concurrent resolution.
The Court of Appeals held not that specification of a date for a joint session in section 202 of the Education Law automatically triggered the convening of a joint session, but only that, "once the specified hour had passed,” "[absent an agreement to postpone for a reasonable time the actual election of the Regents], either house could insist upon convening the joint session” (Matter of Anderson v Krupsak, 40 NY2d 397,405, supra). In other words, specification in section 202 of the Education Law of a date for the convening of a joint session for the purpose of holding a joint ballot refers only to the terminal *283 date for election of Regents by concurrent resolution, and the springing up of the right of either legislative house to insist upon the convening of a joint session and the holding of a joint ballot, the alternative method for election of the Regents.
In the instant case, section 41 of the Public Officers Law establishes only one method for filling vacancies in the Office of Comptroller — namely, a joint ballot (logically and necessarily to be held at a joint session). There is no necessity for the statute to specify a date for the joint session because the statute does not establish an alternative method for the filling of the vacancy (namely, concurrent resolution), failure to timely utilize which is a condition precedent to convening of a joint session. In the instant case it is the vacancy itself that triggers the immediate right of either house to insist upon convening of a joint session for the purpose of exercising the "joint ballot” called for in the statute as the only method of filling vacancies in the Office of Comptroller and Attorney-General.
As stated by the Court of Appeals in Anderson (supra, at 404-405): "On the merits, we turn first to the question of whether the joint session was duly convened. We conclude that it was. Section 202 of the Education Law specifically provides that the two houses 'shall meet in joint session’ at noon on the second Tuesday of March to elect Regents where they have not been able to elect such Regents by concurrent resolution (emphasis added). No formal resolution, as such, by either branch of the Legislature was necessary to convene this joint session mandated by law. Once the specified hour had passed, we think the procedure utilized here was sufficient to convene the joint session. Following receipt of word that the Assembly was ready to proceed in joint session, the Lieutenant Governor, acting as President of the Senate, adjourned the Senate and announced her intention to convene the joint session of the Legislature in the Assembly Chamber. Upon arrival in that chamber, at the invitation of the Speaker, she did convene the joint session. Thus, there can be no question that both houses had not only constructive notice, by virtue of the statute, but also actual notice that the joint session, required by section 202, was being called at that time. The statute requires no more”.
In the instant case, section 41 of the Public Officers Law mandates that upon the appropriate vacancy in the Office of Comptroller, "the two houses * * * by joint ballot, shall appoint a person to fill such actual or prospective vacancy.” *284 (Emphasis added.) As aforesaid, once the vacancy occurs, the duty to fill same by joint ballot arises and the duty and power of each or either house to insist on the convening of a joint session is triggered, so that the duty to fill the vacancy by joint ballot may be accomplished. While it is true that the Legislature, in the enactment of statutes, ordinarily sits and works as a bicameral body, for the purposes of section 41 of the Public Officers Law, it functions as a unicameral body. (See, Matter of Anderson v Krupsak, supra.) This is not really so unusual; in many situations, such as in selection of Judges, the function is exercised by the Senate sitting alone.
While "constructive” notice may be absent because section 41 of the Public Officers Law does not specify the actual date for the holding of the joint session, there is no dispute that plaintiffs had more than sufficient actual notice that the Assembly was convening a joint session at a specific time and place for the purpose of carrying out the specific mandate of Public Officers Law § 41 to hold a joint ballot to fill the vacancy involved. Indeed, the Senate specifically informed the Assembly it would not be present and passed a resolution declaring null and void the Assembly resolution convening the joint session. The rest of the scenario in the instant case substantially followed the factual scenario approved by the Court of Appeals in Anderson (supra).
As to the issue of what constitutes a quorum at a joint session, in Anderson (supra) the Court of Appeals specifically rejected the claim made by the plaintiffs herein "that in order for there to be a quorum of the joint session there must be present a majority of the total number of Senators and also a majority of the total number of Assemblymen. Once the joint session had been convened, the Senate and Assembly were no longer separate bodies of the Legislature, but were instead merged into a unicameral body, where a quorum was simply a majority of the total membership of the unicameral body, without regard to whether those members come from the Senate or the Assembly.” (Matter of Anderson v Krupsak, 40 NY2d 397, 405.) Under this rule it is undisputed in the instant case that a quorum was present at the joint session. (See, n 3, supra.)
No joint resolution having been passed in the instant case specifying the rules which would govern the joint session, once again the Court of Appeals stated in Anderson (supra, at 405), "Certainly, once the joint session was convened, the Legislature, sitting as a unicameral body, could have agreed upon a set of rules governing it. However, there is no such require- *285 merit, statutory or otherwise, and where no such rules have been agreed upon, a joint session is governed by the generally accepted rules of parliamentary procedure which flow from general principles of common law. (59 Am Jur 2d, Parliamentary Law, § 3, p 319.)”
The court has examined all other arguments of plaintiffs and finds them without merit.
Accordingly, for the reasons hereinabove stated, and there being no disputed issues of relevant facts, and all requirements of law having been fully complied with, defendants’ motion for summary judgment is in all respects granted and it is hereby adjudged, ordered and declared:
(1) that the joint session of May 5, 1993 was duly convened;
(2) that a quorum was present at the time of the joint ballot held at said joint session; and
(3) that H. Carl McCall was duly appointed, pursuant to section 41 of the Public Officers Law, as Comptroller of the State of New York, to fill the vacancy in ouch office occurring as a result of the resignation of Hon. Edward V. Regan, the duly elected Comptroller of the State of New York, said resignation having been made, effective midnight, April 30, 1993, and while the Legislature was in session.

. By the time of the return date of the order to show cause bringing on this action and accompanying motion for a preliminary injunction, at a joint session convened by the Assembly, but not concurred in by the Senate, a joint ballot of all legislators present was held, one H. Carl McCall was declared appointed Comptroller, a certificate to that effect was issued by the Speaker of the Assembly and the Lieutenant Governor as President of the Senate, and filed with the Secretary of State, together with an oath of office. Thereupon Mr. McCall entered upon the duties of the Comptroller of the State of New York, and is presently acting in such capacity.

. The concurrent resolution passed by the Assembly called for the joint session to take place May 5,1993.

. There being 150 members of the Assembly and 60 members of the Senate, a quorum of the Legislature sitting as a unicameral body is 106 members.

. If this position is correct, then 31 Senators would have an absolute veto over 179 other members of the Legislature for purposes of section 41 of the Public Officers Law and could prevent the filling of a vacancy in the Office of Comptroller or of Attorney-General, thus frustrating the purposes and intent of said Public Officers Law § 41 and demeaning the high constitutional Offices of Comptroller and Attorney-General.

. Section 202 (1) of the Education Law provides, in relevant part, as follows: "Each regent shall be elected by the legislature by concurrent resolution in the * * * March [preceding the commencement of the term of office on April 1], on or before the first Tuesday of such month. If, however, the legislature fails to agree on such concurrent resolution by the first Tuesday of such month, then the two houses shall meet in joint session at noon on the second Tuesday of such month and proceed to elect such regent by joint ballot.”