[600 NYS2d 289]

RALPH J. MARINO, as Majority Leader and Temporary President of the New York State Senate, et al., Appellants, v SAUL WEPRIN, as Speaker of the New York State Assembly, et al., Respondents.

Third Department, July 8, 1993

### APPEARANCES OF COUNSEL

*Thuillez, Ford, Gold & Conolly,* Albany *(Michael J. Hutter, Dale M. Thuillez* and *H. Neal Conolly* of counsel), for appellants.

*Robert Abrams, Attorney-General,* Albany *(Peter G. Crary* of counsel), for respondents.

### OPINION OF THE COURT

MAHONEY, J.

In this appeal, we are asked to review the legality of H. Carl McCall's recent appointment to the post of State Comptroller; more specifically, whether the joint legislative session at which he was selected was convened in accord with the requirements of Public Officers Law § 41. The salient facts and applicable constitutional principles underlying the controversy are undisputed. While the State Constitution provides that the Comptroller shall be chosen at a general election which must occur at the same time as the gubernatorial election (NY Const, art V, § 1), to the extent that a vacancy occurs between election periods the Legislature is to "provide for filling [such] vacanc[y]" (NY Const, art V, § 1). In furtherance of this mandate the Legislature enacted Public Officers Law § 41, which states: "When a vacancy occurs or exists, other than by removal, in the office of comptroller or attorney-general, or a

resignation of either such officer to take effect at any future day shall have been made while the legislature is in session, the two houses thereof, by joint ballot, shall appoint a person to fill such actual or prospective vacancy."

On February 18, 1993, when the Legislature was in session, duly elected Comptroller Edward V. Regan announced his resignation to be effective April 30, 1993. The timing of the vacancy and the fact that it was created by voluntary resignation triggered the applicability of Public Officers Law § 41. In furtherance of their statutory obligations, leaders of the Senate and Assembly, namely, plaintiffs Ralph J. Marino and Clarence D. Rappleyea, Senate Majority Leader and Assembly Minority Leader, respectively, defendant Saul Weprin, Assembly Speaker, and Manfred Ohrenstein, Senate Minority Leader, met at various times between February 18 and May 4, 1993 to discuss the appointment. While they were able to agree upon a few preliminary matters, unfortunately little other progress was made. Indeed, after approximately 3½ months, no accord was reached regarding a date for the joint ballot. While plaintiffs attempt to minimize this fact, a reading of the record demonstrates that the major obstacle to an agreement was the Republican leadership's insistence that the Democratically controlled Assembly pass two pieces of legislation as a condition to their agreeing to a joint session, namely, a bill providing for a new method of filling future Comptroller and Attorney-General vacancies and a proposal for restructuring control and management of the State public employees' pension fund. When the Democratic leadership of the Assembly rejected this proposal, a stalemate with the Republican-controlled Senate ensued.

Believing that no mutual agreement could be reached, on May 3, 1993, three days after Regan's resignation became final, the Assembly adopted a resolution calling for a joint session of the Legislature to be held on May 5, 1993 at 10:30 A.M. in the Assembly Chamber. While the Senate was advised of the date, time and place of the session, on the day before it was scheduled to occur that body adopted its own resolution declaring any actions taken thereat to be a nullity, an action grounded upon its belief that Public Officers Law § 41 mandated that a joint session be convened by concurrent resolution rather than by unilateral action. Despite this objection the joint session was held as called and attended by 123 members of the Legislature, enough to constitute a quorum. McCall's name was placed in nomination and he received 121 votes, a majority of the 210 seats in both houses of the Legislature. Following issuance of a certificate of appointment by defendant Lieutenant Governor Stanley Lundine and tak-

ing the oath of office as administered by defendant Secretary of State Gail Shaffer, McCall assumed the Comptroller post.

These developments prompted plaintiffs to commence the instant action against defendants seeking, *inter alia,* to declare McCall's appointment a nullity, claiming that it was accomplished in violation of Public Officers Law § 41. They then moved, by order to show cause, for a preliminary injunction. Defendants opposed. By subsequent stipulation, the opposing papers were deemed a cross motion to dismiss and the entire matter was treated, pursuant to CPLR 3211 (c), as a motion for summary judgment. Supreme Court granted defendants' cross motion and declared the May 5, 1993 joint session to be duly convened and McCall validly appointed. Crucial to its conclusion was the court's belief that Public Officers Law § 41 was meaningfully indistinguishable from the joint session requirements of Education Law § 202 (1) construed by the Court of Appeals in *Matter of Anderson v Krupsak* (40 NY2d 397). Borrowing from the *Anderson* rationale, Supreme Court held that "once the [Comptroller's] vacancy occurs, the duty to fill same by joint ballot arises and the duty and power of each or either house to insist on the convening of a joint session is triggered, so that the duty to fill the vacancy by joint ballot may be accomplished". (155 Misc 2d 276, 284.) Plaintiffs appealed. Because of the obvious necessity for expedient review, the parties have been granted a preference.

While Public Officers Law § 41 provides minimal guidance regarding the procedure to be followed in filling a vacancy, stating only that it is to occur by joint ballot, an examination of the statutory language in connection with well-established precedent persuades us that an affirmance is in order. Crucial to our conclusion in this regard is recognition of the fact that a joint ballot can only be cast at a joint session *(see, Whiteside v People ex rel. Upham,* 26 Wend 634, 641). As such, there can be little doubt but that *two* acts are subsumed within the joint ballot mandate of Public Officers Law § 41, namely, the *convening* of a joint session and the *casting* of a ballot thereat. Moreover, framed as it is in unqualifiedly peremptory language and not accompanied or surrounded by any words supportive of a permissive interpretation *(see, Matter of State of New York,* 207 NY 582; *Wuesthoff v Germania Life Ins. Co.,* 107 NY 580, 589-590; *see generally,* McKinney's Cons Laws of NY, Book 1, Statutes § 177), it also seems evident that the joint ballot requirement with its two component parts is imperative, that is, mandated by law.

As such, we agree with Supreme Court that application of the principles enunciated in *Matter of Anderson v Krupsak*

*(supra)* compels the conclusion that either house of the Legislature can convene the joint session. At issue in *Anderson* was whether the election of a Regent proceeded in accordance with the requirements of Education Law § 202 (1), which provided, in pertinent part, that: "Each regent shall be elected by the legislature by concurrent resolution in the preceding March, on or before the first Tuesday of such month. If, however, the legislature fails to agree on such concurrent resolution by the first Tuesday of such month, then the two houses shall meet in joint session at noon on the second Tuesday of such month and proceed to elect such regent by joint ballot." No concurrent resolution was passed and the joint session did not occur at noon on the stated Tuesday. It was convened later that day in the Assembly Chamber, upon notice to the Senate, during which time a new Regent was elected. In a subsequent challenge to the validity of the appointment premised, as here, upon the theory that the joint session was convened improperly, the Court of Appeals held the procedure proper, reasoning simply that because the duty to meet was "mandated by law" *(Matter of Anderson v Krupsak, supra,* at 404), once the specified time period had passed either house could insist that the mandatory session actually occur. Implicit in this reasoning is recognition that the legal obligation cast upon both houses to act in joint session gives rise to a corollary power in each to insist that the law be carried out according to its terms. Such a power logically not only prevents one house from frustrating a legal mandate but also permits the diligent house to avoid any legal liability that otherwise might ensue for willful failure to discharge a duty imposed by law in the event that the obligation cannot be carried out in a mutually agreeable manner *(cf., Matter of State of New York, supra,* at 586).

While plaintiffs attempt to discount the applicability of *Anderson*'s reasoning on the ground that the statute involved in that case does not contain the exact same language as Public Officers Law § 41, we find this contention unpersuasive. As in Education Law § 202 (1), under Public Officers Law § 41 the conducting of a joint session to appoint a successor Comptroller is *mandatory.* While, concededly, the two statutes are different in that Education Law § 202 (1) specifies the time and date of the joint session whereas Public Officers Law § 41 does not, in our view this difference does not render the statutes distinguishable or the Court of Appeals' reasoning in *Anderson* inapplicable. As previously noted, key to the holding in *Anderson* is that Education Law § 202 (1) imposed upon the Legislature a mandatory legal duty. Clearly, it was this fact and the corollary fact that the meeting obligation was joint

and several from which flowed the conclusion that either house could convene it, ostensibly as a means of discharging its legal duty. That being the case, the presence or absence of a specified meeting date, inasmuch as it does not alter the *obligation* to meet but just speaks to the time at which the right to insist upon the conducting of a joint session arises, is of little practical significance. Indeed, inasmuch as there is no qualifying language in Public Officers Law § 41 similar to that contained in Education Law § 202 (1), it seems evident that the obligation to act under the former arises immediately upon the submission of a resignation. Accordingly, we concur with Supreme Court that this joint session, convened as it was, well after the submission and effective date of Regan's resignation and with due notice to the Senate, was procedurally valid.

WEISS, P. J., MERCURE and CASEY, JJ., concur.

Ordered that the order and judgment is affirmed, without costs.