OPINION OF THE COURT
Fern Fisher-Brandveen, J.
Plaintiff, the Council of the City of New York (City Council), moves by order to show cause for an order pursuant to CPLR 6301 preliminarily enjoining and restraining defendants, Rudolph W. Giuliani, Mayor of the City of New York (the Mayor), Abraham M. Lackman, Director of the Office of Management and Budget of the City of New York (Lackman), and the Office of Management and Budget of the City of New York (OMB), from taking any action contrary to the implementation and execution of budget modification resolution 721, including but not limited to enjoining and restraining defendants from impounding funds, and mandating that the *683 Mayor certify and implement the resolution. Defendants cross-move for an order pursuant to CPLR 3212 granting summary judgment and dismissing the complaint in its entirety, on the ground that the City Council’s adoption of resolution 721 and attachment of a "condition” to its approval of budget modification MN-9 in resolution 720 are contrary to the New York City Charter scheme, unlawful, and null and void. The motion and cross motion are consolidated for the purpose of disposition.
THE FACTS
On June 22, 1994, the City Council adopted the budget for the City of New York for fiscal year 1995 beginning July 1, 1994. The 1995 budget has since been amended by budget modifications MN-1 through MN-8.
On October 25, 1994, the Mayor announced his plan for a "significant realignment” of the 1995 budget (the October Plan) to help close a gap of $1.1 billion between anticipated revenues and budgeted expenditures. To implement the May- or’s October Plan, Lackman that same day made two submissions to the City Council proposing modifications to the budget. The first submission, MN-9, requested approval in accordance with section 107 (b) of the New York City Charter, to transfer funds between various agencies, cutting funds from some programs and adding funds to others.
The second proposal, MN-10, which was submitted "in conjunction with MN-9,” requested approval in accordance with section 107 (e) of the New York City Charter, to decrease both the revenue and expense budgets by $189.6 million. Although MN-10 forecasted upward adjustments in revenues from 13 distinct sources totalling $142.9 million, it also set forth a decrease in forecasted revenue receipts from 12 different sources totalling $332.5 million, leaving a net decrease in expected revenues totalling $189.6 million. To compensate for the expected shortfall of revenues, MN-10 also proposed a $189.6 million reduction in the City’s general reserve, the City’s "rainy day” fund in case of budget contingencies.[1] The submission of budget modification proposal MN-10 to reflect a decline in revenues and decrease the general reserve was consistent with prior budget practice.
*684 On November 23, 1994, the morning of the City Council’s stated meeting in which Council resolution 720, related to MN-9, and Council resolution 721, related to MN-10, were calendared for a vote by the City Council, Lackman sent a letter to the Speaker of the City Council withdrawing the MN-10 budget modification proposal. The City Council rejected the withdrawal letter, purportedly in accordance with rule 6.00 of the Rules of the City Council which provides that all papers "proposed to the Council for action * * * must be deposited with the Office of the Speaker before 1 p.m., at least three days, excluding Sundays, preceding the meeting day.”
On the afternoon of November 23, 1994, the City Council took action on MN-9 and MN-10. Pursuant to section 107 (b) of the New York City Charter, the City Council adopted resolution 720 authorizing MN-9, stating that its adoption was "subject to” provisions of the resolution adopted with respect to MN-10. The City Council also adopted resolution 721, pursuant to section 107 (e) of the New York City Charter, and treating MN-10 as a "request to appropriate,” authorized MN-10 as modified by the City Council. Resolution 721 allocated $97.2 million to various agencies and decreased various agency budgets (including the general reserve fund) by $286.8 million, leaving the same $189.6 million deficit in the budget.
On November 26, 1994, the Mayor vetoed resolution 721. The Mayor’s Veto Message addressed to the Speaker of the City Council stated that the adoption of resolution 721, subsequent to the withdrawal of MN-10, was without legal authority and had no legal effect for several reasons, including the contention that once Lackman withdrew MN-10, the City Council was without authority under the New York City Charter to initiate budget modifications, absent a submission from the executive branch.
On November 30, 1994, the City Council voted to override the Mayor’s veto. On December 1, 1994, the City Council presented resolution 721 to the Mayor for certification, however, the Mayor refused to certify the resolution. The City Council filed this action seeking injunctive and declaratory relief with respect to resolution 721, on December 7, 1994.
STATUTORY OVERVIEW

Budget Adoption

The New York City Charter requires the Mayor to submit a preliminary budget in January and an executive budget in *685 April to the City Council for its consideration. (NY City Charter §§ 236, 249 [a], [b].) The City Council is then authorized "to increase, decrease, add or omit any unit of appropriation for personal service or other than personal service,” proposed in the Mayor’s executive budget. (NY City Charter §254 [a].)
The budget consists of "units of appropriation,” for personal service and for other than personal service, each representing a "particular program, purpose, activity or institution.” (NY City Charter § 100 [c].)
Pursuant to New York City Charter § 255 (a), the Mayor may veto "any increase or addition to the budget, any unit of appropriation, or any change in any term or condition of the budget,” made by the City Council. New York City Charter § 255 (b) provides that the Council may override the Mayor’s veto by a two-thirds vote of all Council members made within 10 days after the Mayor’s disapproval. New York City Charter § 256 provides that when the budget is finally adopted, the Mayor, Comptroller and City Clerk must certify the budget.

Budget Modification during Fiscal Year

The New York City Charter sets forth procedures for the modification of the City’s budget during the fiscal year. If the Mayor wishes to transfer funds from one agency to another, or reallocate funds within an agency which would result in any unit of appropriation having been increased or decreased by more than 5% or $50,000, whichever is greater, then New York City Charter § 107 (b) sets forth the procedure. The Mayor must notify the City Council of the proposed action. The City Council may then disapprove the proposed action within 30 days after the first stated meeting following receipt of the notice. (NY City Charter § 107 [b].) Consequently, if the City Council takes no action within the 30-day period, then the modification is automatically approved.
In circumstances where the Mayor proposes the "appropriation of new revenues from any source” or "previously unappropriated funds from any source” during the fiscal year, New York City Charter § 107 (e) applies. In such case, the procedures and required approvals set forth in New York City Charter §§ 254, 255 and 256, i.e., the procedures utilized during budget adoption, are followed.

Rules of the City Council

New York City Charter § 46 provides for the adoption by the City Council of its own rules. Rule 6.00 of the Rules of the *686 City Council regarding the preparation and presentation of papers regarding proposed local laws and resolutions states: "The word paper when used herein shall include all local laws, resolutions, petitions, communications from City, county and borough offices and reports which may be proposed to the Council for action. All papers other than committee reports shall be presented in writing and in quadruplicate, endorsed with the name of the introducer or originator, and with the exception of committee reports, must be deposited with the Office of the Speaker before 1 p.m., at least three days, excluding Sundays, preceding the meeting day.”
SUMMARY OF ARGUMENTS
The City Council submits that in 1989, the citizens of New York City voted in favor of a new New York City Charter which significantly enhanced the powers of the City Council, giving it the sole authority under New York City Charter §§ 254 and 255 to modify the budget as submitted by the Mayor, and to adopt the annual budget with the City Council’s modifications. The City Council contends that during the fiscal year, whenever the Mayor submits a budget modification proposal pursuant to New York City Charter § 107 (e), which reflects new revenues from any source or the proposed use of unappropriated funds from any source, the City Council’s full budgetary powers under New York City Charter § 254 are triggered giving the City Council the authority to alter the proposal to "decrease, add or omit any unit of appropriation” and to "add, omit or change any terms or conditions related to any or all such appropriations.”
The City Council insists that the language of New York City Charter § 107 (e) does not limit the application of their full budgetary powers if new revenues are identified as part of a proposed reallocation of a net loss. Furthermore, plaintiff argues that the Mayor has acknowledged the Council’s authority under the New York City Charter to allocate the new revenues identified in MN-10 by the fact that the proposed modification was submitted under New York City Charter § 107 (e). Therefore, the City Council maintains that when the Mayor identified 13 distinct sources of additional revenues totalling $142.9 million in his MN-10 submission, the City Council had the authority to appropriate the new revenues as they saw fit.
*687 According to the City Council, the Mayor’s withdrawal of the MN-10 proposal was untimely, and therefore void, under rule 6.00 of the Rules of the City Council, which requires that any submission to the Council must be made at least three days prior to the time that the City Council is being asked to act on it. The City Council argues that New York courts should not interfere with the procedural rules adopted by a Legislature, absent extraordinary circumstances. Plaintiff also submits that the New York City Charter does not provide for the withdrawal of a previously submitted budget modification. Finally, plaintiff submits that in any event under principles of estoppel and loches, the Mayor cannot withdraw proposed legislation he sent to the Council almost a month earlier on the very day the Council is scheduled to vote on it.
Accordingly, plaintiff claims that resolution 721, altering MN-10, and resolution 720, conditionally authorizing MN-9, were validly adopted, and defendants must be preliminarily enjoined from taking any action contrary to their implementation. In addition to the likelihood of success on the merits, the City Council argues that it will be irreparably harmed if the court does not grant the relief sought, as the Mayor has threatened to impound the funds necessary to effect the resolutions,[2] rendering a final judgment in this action ineffectual. Further, the City Council asserts that the public interest mandates injunctive relief because entities are being defunded which provide services to the citizens of the City in areas such as soup kitchens, day care, education, drug and alcohol rehabilitation programs and health care provided to the mentally ill.
In opposition, defendants argue that the City Council’s contention that it is authorized to make cuts and restorations based on MN-10, which was submitted on October 25, 1994 and withdrawn from Council consideration on November 23, 1994, is fallacious for several reasons. First, defendants assert that MN-10 did not provide a predicate for any spending action under New York City Charter § 107 (e), because the Mayor did not make a "request” to "appropriate] new reve *688 núes”, as MN-10’s purpose was to notify the City Council of a $189.6 million shortfall in revenues and reduce the City’s general reserve. Defendants contend that MN-10 was submitted pursuant to New York City Charter § 107 (e) in accordance with the custom and practice which has developed over the years to reduce the budget’s general reserve, and the City Council has never treated such a proposal as a request for new appropriations. Defendants suggest that by cutting $189.6 million more than it restored to agency budgets, the City Council acknowledged that there is a $189.6 million revenue gap, and no new funds to allocate.
Second, defendants contend that even when new revenues are available for expenditure and the Mayor makes a request to appropriate, the City Council does not have the power to reallocate existing monies among the agencies under New York City Charter § 107 (e). Rather the City Council may vote to allocate the new monies differently in accordance with the procedures that govern when the budget is adopted. Defendants assert that resolution 721 reallocates existing monies among agencies by cutting various agencies by $286.8 million and adding $97.2 million to other agency budgets; which, in effect, modifies the cuts and restorations proposed in MN-9 and approved by resolution 720.
Third, defendants contend that the plaintiff’s adoption of resolution 721 after it had been withdrawn from Council consideration was contrary to the New York City Charter, which does not give the City Council the power to initiate and take unilateral action upon budget modifications. Defendants claim that the City Council’s internal rules only govern its own proceedings and cannot affect the powers and authority of the Mayor to withdraw a budget modification proposal. Moreover, defendants assert that rule 6.00 of the Rules of the City Council is inapplicable herein because no "action” by the Council was requested by Lackman’s letter withdrawing MN-10. Defendants argue in any event that rule 8.00 of the Rules of the City Council allows messages from the Mayor to be received at any time.
Defendants claim that they are entitled to summary judgment on the ground that the City Council’s adoption of resolution 721 is contrary to the New York City Charter scheme, unlawful, and null and void. Defendants further assert that the condition attached by the City Council to its approval of resolution 720 is illegal and argue that if resolution 721 is found to be invalid, resolution 720 would remain in *689 effect because the City Council did not exercise its right to disapprove MN-9 within the 30-day period set forth in New York City Charter § 107 (b).
DISCUSSION
The parties have characterized this battle as a test of the powers of the executive and legislative branches of the City government under the New York City Charter with respect to budget modifications during the fiscal year. The City Council contends that the Mayor is attempting to rewrite the budget as adopted by the City Council in June in contravention of the New York City Charter, under the guise of making mid-year transfers of funds. The Mayor argues that the City Council’s actions are a flagrant attempt to exceed unambiguous language in the New York City Charter which prohibits the City Council from reallocating existing funds during the fiscal year. In essence, both parties ask the court to rule on the validity of the adoption of resolutions 720 and 721. Before the court may consider any of these issues, it is first constrained to rule on defendants’ contention that the City Council improperly took action with respect to budget modification proposal MN-10, in light of the Mayor’s withdrawal of that proposal. If, indeed, the City Council acted improperly in rejecting the withdrawal letter, and then adopting resolution 721, then these issues become moot.
It is undisputed that MN-10 was submitted to the City Council on October 25, 1994, and on November 23, 1994, the day the City Council was scheduled to vote on resolution 720, relating to MN-9, and resolution 721, relating to MN-10, the Mayor sought to withdraw MN-10 from Council consideration by sending a letter to the Speaker of the City Council.[3] The City Council received the letter before the vote, but nonetheless rejected the withdrawal letter, purportedly in accordance with rule 6.00 of the Rules of the City Council, which requires that all papers submitted to the Council for action be delivered at least three days before the meeting day. Resolution 720, approving MN-9, was then adopted, subject to the City Council’s action with respect to MN-10. Resolution 721 was *690 adopted "altering” MN-10 so as to increase and decrease funding for various agencies unrelated to the MN-10 proposal, including, in many cases, restoring funding cut by MN-9 and in some cases decreasing or modifying agency budgets not affected by MN-9.
This court believes the City Council was not justified in choosing to ignore the withdrawal letter. There is no conceivable reason why the City Council would require three days before paying attention to a letter that merely withdraws a proposal. Clearly, the Council was obligated to consider the withdrawal, and once it did so, to refrain from voting on the proposal. Such a conclusion is not rooted in an interpretation of rule 6.00 of the Rules of the City Council. Rather, it is rooted in common sense.
Rule 6.00 of chapter VI of the Rules of the City Council concerning "Proposed Local Laws and Resolutions,” applies to papers proposed to the Council "for action. ” Indeed, the logical rationale for the three-day requirement is to give Council members a sufficient period of time to review, discuss, and prepare debate on any papers upon which they must act. No such activity was necessary here. The Mayor’s withdrawal of budget modification proposal MN-10 did not require the City Council to take any action which would necessitate three days’ advance notice.[4] Rather, the only "action” remotely called for in response to the withdrawal letter was to remove budget modification proposal MN-10 from Council consideration.
As no reasonable interpretation of rule 6.00 of the Rules of the City Council could possibly aid the City Council’s argument, its reliance on Michels v Cuite (104 Misc 2d 540 [Sup Ct, NY County 1980]) is misplaced. Referring to that case, the City Council claims that its application of rule 6.00 must be determinative, because a Legislature is considered to be the ultimate arbiter of its own rules. Of course, courts generally refrain from intervening in internal administrative disputes within the Legislature; to do so would frustrate the fundamental constitutional principle of separation of powers among the three branches of government. (See, Matter of King v Cuomo, 81 NY2d 247 [1993]; Matter of Board of Educ. v City of New York, 41 NY2d 535 [1977]; Matter of Anderson v Krupsak, 40 NY2d 397 [1976]; Matter of Gottlieb v Duryea, 38 AD2d 634 *691 [3d Dept 1971], affd 30 NY2d 807 [1972].) Here, however, no such issue is presented since rule 6.00 of the Rules of the City Council is wholly inapplicable. No conceivable reading of the rule would require the City Council to ignore a letter withdrawing a proposal. Therefore, no interpretation of an internal rule is involved.
In addition, in Michels v Cuite (supra), an internal dispute between Legislature members over procedure in taking legislative action was at issue. Here, no internal rules are applicable and coequal branches of government cannot agree about their respective powers. The judiciary in this event has no alternative but to act as the arbiter.
Under the New York City Charter it is the Mayor’s power to initiate a budget modification proposal. It follows naturally that it is within the Mayor’s providence to withdraw a budget modification proposal before it is acted upon, notwithstanding rule 6.00 of the Rules of the City Council. Although the City Council argues that the New York City Charter does not provide for the withdrawal of a previously submitted budget modification proposal, there is nothing in the New York City Charter that prohibits its withdrawal.[5] Without a budget modification proposal from the executive branch before it, the City Council is without authority under the New York City Charter to unilaterally initiate budget modifications. Thus, once Lackman withdrew MN-10 from Council consideration on November 23, 1994, the City Council was prohibited from taking action which altered MN-10. Neither logic nor sound public policy would compel the Legislature to consider a budget modification which has been withdrawn by the Mayor.
Further, the court finds no merit in the City Council’s contention, unsupported by authority, that the equitable doctrines of estoppel and loches somehow act as a bar to the Mayor’s withdrawal of MN-10. Among other things, the City Council has failed to show how it justifiably relied to its detriment upon the Mayor’s proposal or how it was adversely affected by the Mayor’s delay in withdrawing MN-10.
Based upon the foregoing, the court finds that the City Council’s actions in ignoring the withdrawal of MN-10, and *692 adopting resolution 721, were in contravention of the New York City Charter scheme. Accordingly, resolution 721 is invalid on its face and the court cannot order its implementation.
Defendants contend that if resolution 721 is stricken, MN-9 as submitted by the Mayor must remain in effect, since the City Council did not exercise its right to disapprove MN-9 within the 30-day time period specified in New York City Charter § 107 (b). Defendants assert that the City Council’s authority under New York City Charter § 107 (b) limits the Council to approving or disapproving MN-9 within 30 days of receiving notice of the Mayor’s proposal. Defendants argue, therefore, that the City Council’s condition attached to MN-9 was illegal and void.
The City Council insists that MN-9 and MN-10 are inextricably intertwined, as they were submitted in conjunction with each other and the Council acted upon them jointly. The City Council urges that a finding that resolution 721 is invalid mandates a declaration that resolution 720 is invalid as well.
Defendants’ contention that MN-9 remains in effect because the Council failed to disapprove within the 30-day period is unavailing. It is unquestionable that when the Mayor submitted budget modification MN-10 to the City Council for consideration, Lackman’s October 25, 1994 letter specifically stated that it was being submitted in conjunction with MN-9. Furthermore, the language of resolutions 720 and 721 clearly express the City Council’s intention that the two resolutions be read and applied together.[6] Implicit in the City Council’s contingent approval of MN-9 is its disapproval of MN-9 should its actions with respect to MN-10 be voided. Thus, since this court has concluded that resolution 721 is defective on its face, resolution 720, approving MN-9, must be deemed disapproved by the City Council.
*693 For the above-stated reasons, plaintiffs motion for an order pursuant to CPLR 6301 preliminarily enjoining and restraining defendants from taking any action contrary to the implementation and execution of resolution 721 is denied.
That portion of defendants’ cross motion seeking an order pursuant to CPLR 3212 granting summary judgment on the ground that the City Council’s adoption of resolution 721 was null and void is granted.
That branch of the cross motion seeking summary judgment on the ground that the City Council’s attachment of a condition to its approval of resolution 720 was null and void is denied.
It is adjudged that pursuant to CPLR 3212 (b) plaintiff is granted partial summary judgment on the alternative relief sought in the first cause of action of its complaint to the extent that budget modification proposal MN-9 is declared disapproved.
Accordingly, the June 1994 budget, as modified by MN-1 through MN-8, stands in effect, with the trust that the City Council and the Mayor can work together to find a solution to the City’s current budget dilemma, which is both economically acceptable and palatable to both sides.

. The New York State Financial Emergency Act for the City of New York requires the City to maintain a general reserve. The general reserve is a unit of appropriation in the City’s expense budget.

. Under New York City Charter § 106 (b) the Mayor has the power during the fiscal year to impound funds whenever he determines that the full amount of any appropriation should not be available for expenditure. The New York City Charter merely requires the Mayor to notify the Council pursuant to New York City Charter § 106 (e) of such determination and the implications and consequences of those impoundments for service levels and programmatic goals affected.

. The parties agree that Lackman’s November 23, 1994 withdrawal letter was precipitated by his learning of the City Council’s intentions to adopt alternative budget modifications. During oral argument, the City Council was equally candid that its actions were based on concern that the Mayor would exercise his impoundment powers.

. In fact, plaintiffs counsel conceded during oral argument that no action was required in response to the withdrawal letter. Nor is there any showing that the Council voted on the withdrawal.

. The City Council does not refute Lackman’s allegation in paragraph 27 of his affidavit which states that mayoral proposals have been withdrawn on a number of occasions and the City Council has never suggested that the Mayor is not permitted to do so.

. The heading of resolution 720 states as follows: "Resolution approving the modification of units of appropriation and the transfer of City funds between agencies proposed by the Mayor pursuant to section 107(b) of the Charter of the City of New York subject to provisions of the resolution adopted on even date herewith exercising procedures and approvals pursuant to sections 254, 255, and 256 of the Charter of the City of New York in connection with the proposed appropriation of new revenues pursuant to section 107(e) of the Charter of the City of New York” (emphasis added).
Resolution 721 states, in pertinent part, "the City Council by resolution adopted on even date herewith, approved the Notification pursuant to Section 107(b) of the Charter, the terms of which resolution shall be subject to the provisions of this resolution”.